## Case No. 5,180.

### GAINES v. TRAVIS.

[Abb. Adm. 422;[1] 8 N. Y. Leg. Obs. 45; 3
Am. Law J. (N. S.) 199; 2 N.
Y. Code Rep. 102.]

District Court, S. D. New York. Jan. 22,
1849.

S. Sanxay, for the motion.
Alanson Nash, opposed.

BETTS, District Judge. This is a motion
on behalf of McKee, the stipulator for the
respondent in the cause, to set aside all
proceedings therein subsequent to the final

---

[1] [Reported by Abbott Brothers.]

decree, and also to discharge McKee from
arrest on a capias and satisfaciendum issued
upon the decree. It appears upon the papers
and minutes of court, read on the motion,
that the cause was brought to hearing upon
proofs given in court, in September term
last. The matter in contestation was the
liability of the respondent to pay to the proc-
tor of the libellant the taxable costs which
had accrued in the case. Circumstances in-
tervened after the argument which prevent-
ed the court considering and deciding the
cause until November term last, when a de-
cree was rendered in favor of the libellant.
Early in December, his proctor served on
the proctor of the respondent a copy of the
bill of costs, with due notice of taxation.
The bill was returned by the respondent's
proctor with a note, stating that he had not
yet received notice of any decision in the
case, and saying, "when I do, if it is against
me, I shall, I think, most certainly appeal."
This note was dated December 5th. The
libellant's proctor proceeded notwithstand-
ing, to tax his costs, and having perfected
the decree, issued a writ of capias ad satis-
faciendum thereon. The decree entered was
against the respondent, and McKee, his bail
or stipulator, for the amount of taxed costs;
and McKee was imprisoned upon the execu-
tion. These proceedings, it is alleged, are
without warrant of law, and irregular; first,
because the decree was inoperative against
the respondent until a copy with a notice
of its rendition and entry was served on the
proctor of the respondent; and, secondly,
because the libellant took a final decree sum-
marily at once against the bail or stipulator,
without any process against him or warn-
ing of the proceeding, and followed decree
so obtained by peremptory process or arrest.
It is further contended, that if the regularity
of the practice is supported by the court,
the respondent and his surety are, by the
laws of the United States, exempt from im-
prisonment upon the judgment, and that the
bail is accordingly entitled to instant dis-
charge therefrom.

The first objection is not tenable. This
court does not pursue the practice of the
English admiralty and ecclesiastical courts
in awarding edicts or monitions to parties
to appear in court, and hear sentence or
perform it, or admonish their fidejussors to
do so. 2 Browne, Civ. & Adm. Law, 256, 407,
429; Clarke, Prax. 63, 65. The multifarious
proceedings connected with the progress of
a cause through its different stages in those
courts, are here dispensed with, and after
issue, an admiralty cause is put upon the
calendar, brought to hearing, and disposed
of substantially in the same manner as suits
in the common-law courts. Betts' Adm. 98.
The omission of the supreme court, in its
code of rules adopted in 1845, to change the
notorious course of the federal courts in this
particular, strongly implies its sanction. No
rule of this court, or of the supreme court,

renders it necessary for either party to give the other notice of a final decree, otherwise than in employing the proper means for enforcing it, and no trace of such practice appears in any other of the United States courts. Dunl. Adm. Pr. 301; Conkl. Adm. Pr. 703. If the case is appealable, the decree cannot be executed in this court within ten days after it has been rendered (Dist. Ct. Rules, 152); but it is not made incumbent upon the party obtaining the decree to warn the other when that period of delay will expire. The entry apud acta, is notice to all parties. The delay or suspension of execution, is for no other purpose than to aid the party in exercising his right of appeal. In case of surprise or misapprehension, the court will always interfere on motion and due proofs, and enlarge the time or stay execution until a reasonable opportunity is afforded to perfect an appeal. Except to that end, the practice in this court extends no indulgence or privilege to the parties in the suit, to be notified or advised out of court of proceedings in respect to the final decree. The libellant is not, therefore, chargeable with any irregularity in omitting to serve a copy of the decree on the respondent or his proctor. In the present case, it is admitted that the respondent's proctor was informed by the deputy clerk that the decree was rendered before he received the bill of costs with notice of taxation, which of itself was sufficient intimation to put him on inquiry.

The proceeding excepted to by the second objection, is comparatively a novel one in the practice of this court, and therefore deserves more critical attention. Under the standing rules and usages of the court, it had formerly been necessary, in order to enforce the undertaking of stipulators, to proceed by independent orders and notices, after the lapse of ten days, to bring them before the court, to show cause why execution should not issue against them. Dist. Ct. Rules, 145; Betts' Adm. 98. The obligation of stipulators, as fixed by the rules of this court, and also the remedy against them, have, since the promulgation of these rules, been essentially altered by the rules of the supreme court. The bond or stipulation in this case was taken under the latter, (Sup. Ct. Rules, 3); and the condition prescribed by that rule is, that the respondent will appear in the suit, and abide by all orders of the court interlocutory or final in the cause, and pay the money awarded by the final decree rendered in court. And the rule provides that "upon such bond or stipulation summary process of execution may and shall be issued against the principal and sureties by the court, to enforce the final decree." It appears this is a well-considered direction of the court, for the same language is repeated in rule 4. The practice in the Massachusetts courts had long antecedently been in conformity with that provision, (Dunl. Adm. Pr. 301–303), and in this court, since

1838, execution issued summarily against stipulators if the original decree was not satisfied, (Dist. Ct. Rules, 59), although the stipulators were charged by distinct proceedings (Dist. Ct. Rules, 145). Under the supreme court rule, however, execution goes against stipulators upon the decree against the principal; the sureties subjecting themselves by force of their undertaking to abide and fulfil the decree against the principal. Conkl. Adm. Pr. 459–774. This practice may fall within the usages familiar also to courts of law and equity, of requiring parties who have a common interest in questions litigated in the same court, in several distinct causes, either by agreements or stipulations between themselves, or by express order of the court to abide the decision of the subject-matter made in one case only. Such judgment or decree thereby, has the same effect and is executed in like manner against all. The stipulator under this rule binds himself to pay the money decreed against the principal. There is nothing, therefore, left open for him to question, as between the original parties, after a final decree fixing the liability of the principal. If admonished or cited by sci. fa., he could not be permitted to set up error of any kind in the decree, or surrender the principal, or invoke prior execution upon his property, and all the advantage of such after-proceeding would be to afford delay to him in satisfying the terms of the decree. The court, however, accepts his undertaking as placing him in a common predicament with his principal, and as a submission of himself to the same processes upon the decree. Conkl. Adm. Pr. 774. The execution taken out in this case was, therefore, authorized by rule 4, and is in conformity with rule 21; and the objection to this method of proceeding cannot, therefore, be supported.[2] The term "summary," when used in relation to process. means "immediate; instantaneous." This in no way interferes with the authority of the court over it, whilst in progress of execution, but it is issued summarily in contradistinction from the ordinary course by emanating and taking effect, without intermediate applications or delays.

The last point discussed in the case relates to the effect of the non-imprisonment acts of congress and of this state, and whether a stipulator can now be made subject to arrest and imprisonment on execution upon a decree in the admiralty, for breach of a contract. A preliminary question was raised as to the regularity of the process issued, it being a fi. fa. against the property, with direction to arrest the person in case no property was found to satisfy the decree. This objection is not tenable. Under rule 3 of the supreme court, the stipulator becomes subject to the same decree and process with his principal, and this form of execution is authorized by

---

[2] See, also, on this point, Holmes v. Dodge [Case No. 6,637].

Sup. Ct. Rule 21. The two acts of congress abolishing imprisonment for debt on process issuing out of the courts of the United States, were passed February 28, 1839, and May 14, 1841 (4 Stat. 321, 410). The second act is supplementary to and declaratory of the first, and directs it to "be so construed as to abolish imprisonment for debt on process issuing out of any court of the United States, in all cases whatever, where, by the laws of the State in which said court shall be held, imprisonment for debt has been or shall hereafter be abolished." The act of 1839, in terms applied only to the laws of the states existing at the time of its enactment.

The Revised Statutes of New York, in force when both acts of congress passed, direct that no person shall be arrested or imprisoned on any civil process issuing out of any court of law, or any execution issuing out of any court of equity, in any suit or proceeding instituted, for the recovery of any money due upon any judgment or decree, founded upon contract, or due upon any contract, express or implied, or for the recovery of any damages from the non-performance of any contract. 1 Rev. St. 807, § 1. Regarding the state statute as thus incorporated into the act of congress, it would manifest the intention of the legislature to limit its application to arrests and imprisonments made on civil process issuing out of courts of law, and executions only issuing out of courts of equity. This court cannot enlarge the repealing force of the statute beyond the plain meaning of its language, nor suppose the legislature looked beyond the two descriptions of process specifically designated. The distinction between courts of law, equity, and admiralty, is pointedly marked in the constitution and laws of the United States. Const. art. 3; Process Acts of 1789, 1792, and 1828; 1 Stat. 93, 276. It is directed, that the forms of writs, executions, and other process, and the forms and modes of proceeding in suits in those of common law, shall be the same in each state, as used or allowed in the supreme court thereof, in those of equity, and in those of admiralty and maritime jurisdiction according to the principles, rules, and usages which belong to courts of equity and to courts of admiralty respectively, as contradistinguished from courts of common law. Act May 8, 1792; 1 Stat. 276, § 2. The act of May 19, 1828, is to the same effect in respect to states admitted into the Union since 1789 (4 Stat. 278); and section 3 of the latter act, which directs executions and final process issued on judgments and decrees rendered in any of the courts of the United States to conform to those of the state, plainly limits the decrees to those made by courts of equity. Manro v. Almeida, 10 Wheat. [23 U. S.] 473; Hinde v. Vattier, 5 Pet. [30 U. S.] 398. Power is given the courts by these acts, to vary their processes at discretion, and so as to render them operative entirely beyond like process issued by state courts (Bank of U. S. v. Halstead, 10 Wheat. [23 U. S.] 51), unless congress has regulated the subject by specific enactments (Duncan v. U. S., 7 Pet. [32 U. S.] 435).

It is manifest upon this succinct summary of the acts of congress and decisions of the United States courts, that the state statute referred to has no application to arrests and imprisonments under process from courts of admiralty. Their practice remains as it was declared by the acts of 1789 and 1792, and as altered by the courts under the authorization of those acts and that of 1842, to be adverted to hereafter. Gardner v. Isaacson [Case No. 5,230]. On April 12, 1848, the legislature of New York passed an act "to simplify and abridge the practice, pleadings, and proceedings of the courts of this state." [71 Sess. Laws N. Y. 497.] By section 153 of that act, it is declared, that "no person shall be arrested in a civil action except as prescribed by this act," and then specifies the cases in which a defendant may be arrested; none of which include suits or contracts without fraud or deceit. A libel and warrant of arrest, in personam in admiralty, is a civil action within the proper classification of remedies; and this interdiction of arrest, in connection with the act of 1841, would give to defendants in admiralty the same exemption from arrest as defendants have under processes from the courts of law and equity. There is no doubt that congress may, by clear enactment, adopt the prospective legislation of the states, and impart to it the effect of an act of the national government. U. S. v. Paul, 6 Pet. [31 U. S.] 141. Upon the same principles, congress can confer on the United States courts power to regulate process in conformity to existing state laws, or direct it to be conformed to future legislation of the state upon the subject. Ross v. Duval, 13 Pet. [38 U. S.] 45. All regulations relating to processes of courts are regulations of practice. [Wayman v. Southard], 10 Wheat. [23 U. S.] 1. In this, the United States jurisprudence is wholly distinct and independent of that of the states, and accordingly the local methods of proceeding govern the United States courts only in so far as they are sanctioned by authority of congress or the courts. This authority is expressed as well by rules which the courts are empowered to prescribe, as specifically by statutory enactment. The acts of congress to abolish imprisonment for debt, assume to act only over process, and are merely provisions regulating the practice of the United States courts. They are not placed upon high principles of humanity or public policy. They profess no more than a purpose to conform to the processes employed by the states where the courts exercise jurisdiction, forbidding the imprisonment of debtors when not allowed by the laws of one state, and permitting it wherever authorized by the laws of others. Ac-

cordingly, if the legislature of New York at its present session, should rescind the code of practice promulgated by the last, this provision, which is supposed to stand in connection with the act of congress of May 14, 1841 [supra], would eo instanti cease to have influence over the proceedings of the United States courts. It becomes necessary, therefore, to examine the act of congress of 1842, to ascertain whether this matter is not now withdrawn from the regulation of the state legislature, and specifically provided for by congress.

The act of August 3, 1842 (4 Stat. 518, § 6), confers upon the supreme court "full power and authority to prescribe and regulate and alter the forms of writs and other process to be used and issued in the district and circuit courts of the United States, and generally to regulate the whole practice of said courts." In January term, 1845, the supreme court adopted a body of rules governing the United States courts in admiralty proceedings, and the portions of those rules before cited fully appoint the form of process used in this case. The question then is, does the existing law of New York, in connection with the act of congress of May 14, 1841, prevent the operation of the act of August 23, 1842, and the rules of the supreme court established under its provisions? The act of congress of May 14, 1841, at the time of its passage, took effect the same as if it had incorporated the state enactment of 1848. It thus interdicted the arrest and imprisonment of parties prosecuted in matters of contract and debt in this court, suits in admiralty being civil actions. Upon the same principle, the rules of the supreme court of 1845, are to be regarded as acquiring the force and effect of a positive enactment. Congress can legislate prospectively through the action of the supreme court as well as that of a state legislature. Manifestly then, the act of 1842, carried out by embodying the rules of the supreme court of 1845, repeals or suspends so much of the act of 1841, and its complement of state laws, as stand in contradiction to it. The latter law regulates the form and effect of admiralty process, and reinstates the power of arrest and imprisonment under it for debt. The law of New York, passed subsequent to the act of 1842, cannot supplant or suspend the provisions and effect of the latter, and restore those of the act of 1841, congress having, by the act of 1842, substituted the supreme court in place of state legislatures as the law-making power in the future regulation of the processes and practice of the courts, the action of the court under that power necessarily annuls all antecedents and subsequent control of the state laws over the subject. So long as the supreme court rules remain unchanged by the court or congress, they must supply the absolute law of practice over the subject.

I do not enter into the discussion whether, upon this construction of the act of 1842, the supreme court may not also extend to courts of law and equity, the same power to arrest and imprison on process, that is given in admiralty cases. The point is not before me for adjudication; and although that is a legitimate and forcible consideration on weighing the probable meaning and intent of congress in the entire provision, it is not in my judgment of such force as to justify me in holding that the supreme court had misinterpreted their powers under the statute in relation to admiralty practice, or that the act of 1841 should be expounded to draw within its provisions cases clearly not covered by it at its enactment, and brought into existence by state legislation subsequent to the act of 1842, and the rules of the supreme court established under its authority. The known usage in the admiralty courts, up to the present time, to arrest for debt and hold to bail, or imprison for want of it, upon their processes, notwithstanding the acts of congress of 1839 and 1841, and the laws of state legislatures abolishing arrests and imprisonment for debt, is impressive evidence that congress acquiesced in the judgments of the courts, that those laws did not govern the practice in admiralty; more especially since the promulgation of the admiralty rules, in 1845, by the supreme court, in which the authority to arrest and imprison on admiralty process, was explicitly recognized and declared. And the practice having since been constant and open to arrest and imprison parties on mesne and final process, from the admiralty, it must be accepted that congress intended by the act of 1842, to place the regulation of this branch of practice under the direction of the supreme court, and not leave it subject to the changeable legislation of the states.

I accordingly pronounce against the motion on all the points raised, but they being of novelty and importance, the decision is without costs.