*Ex parte* J. P. GUDENOGE.

No. A-103.    Opinion Filed March 3, 1909.

(100 Pac. 39.)

1.    **WITNESSES—Privilege of Witness—Answer Tending to Incriminate Self.** Under section 21 of the Bill of Rights (Bunn's Ed. sec. 30), which declares that "no person shall be compelled to give evidence which will tend to incriminate him, except as in this Constitution specifically provided," and section 27 of the Bill of Rights (Bunn's Ed. sec. 36), which provides that "any person having knowledge or possession of facts that tend to establish the guilt of any other person or corporation charged with an offense against the laws of the state, shall not be excused from giving testimony or producing evidence, when legally called upon so to do, on the ground that it may tend to incriminate him under the laws of the state; but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing, concerning which he may so testify or produce evidence"—where a person is under examination before a county judge in an investigation into supposed violations of the prohibitory law, otherwise known as the "Enforcement Act" (Laws 1907-08, p. 604, c. 69), under the provisions of section 4 of said act. he is not obliged to answer questions where his answers will tend to incriminate him, unless the inquisition is held for the purpose of inquiring into a complaint made, supported by affidavit, charging an offense against the provisions of the prohibitory law.

2.    **SAME.** Section 27 of the Bill of Rights (Bunn's Ed. sec. 36) removes the protection of the constitutional privilege as set forth by section 21 of the Bill of Rights (Bunn's Ed. sec. 30), and said section 27 must be construed as declaring that no evidence obtained from a witness by means of a judicial proceeding shall be given in evidence or in any manner used against him or his property or estate, in any court of the state, in any criminal proceeding, or for the enforcement of any penalty or forfeiture;

provided, that on an inquisition held under section 4, art. 3, c 69, p. 604, Sess. Laws 1907-08, otherwise known as the "Enforcement Act," the proceeding so held shall be predicated upon a complaint made, supported by affidavit, that there has been a violation of the penal provisions, or some one of them, of said act, charging some person or persons with said violation.

3. **SAME.** The manifest purpose of the constitutional provisions, both of the United States and of this state, is to prohibit the compelling of testimony of a self-criminating kind from a party or witness.

4. **INTOXICATING LIQUORS—Offenses—Proceedings—Presumption of Jurisdiction.** An inquisition under the provisions of section 4 of said enforcement act (Laws 1907-08, p. 604, c. 69) is a proceeding special in its nature, and no presumption can attach in favor of its jurisdiction.

5. **WITNESSES—Privilege of Witness—Answer Tending to Incriminate.** No statute, which leaves a party or witness subject to prosecution after he answers the criminating question put to him, can have the effect of supplanting the privilege conferred by the Constitution. To be valid the statute must afford absolute immunity against future prosecution for the offense to which the question relates.

6. **CONTEMPT—Direct and Indirect Contempt—"Civil Contempt"— "Criminal Contempt."** Contempts of court are divided into direct and indirect contempts, and are classified as civil and criminal. The distinction between "civil" and "criminal" contempts is plainly drawn. The former consists in disobeying some judicial order made in the interest of another party to the proceeding; the latter, of acts disrespectful to the court or obstructive to the administration of justice, or calculated to bring the court into disrepute.

7. **SAME—Witnesses—Power to Punish.** The power of courts to punish for contempt is inherent. Refusal to answer questions in a criminal proceeding is a criminal contempt, and the punishment therefor is governed by the provisions of the Criminal Code, and where the statute limits the duration of the punishment the punishment may conform to such limitation, but cannot exceed it.

8. **HABEAS CORPUS—Grounds of Relief—Want of Jurisdiction.** Where the court or judge thereof was without jurisdiction or power to render the judgment or issue process for the imprisonment of a party, the imprisonment is illegal, and this court will grant relief by **habeas corpus.**

9. **SAME—Grounds of Relief—Want of Jurisdiction—Contempt.** Jurisdiction of the person and of the subject-matter are not

alone conclusive, but the jurisdiction of the court or judge thereof to render the particular judgment is a proper subject of inquiry, and if, upon the whole record, it appears that the judgment was unwarranted by law, the contemnor will·be released on the hearing of a writ of habeas corpus.

(Syllabus by the Court.)

Original application for *habeas corpus* by J. P. Gudenoge. Writ allowed, and petitioner discharged.

The petitioner, J. P. Gudenoge, was on the 19th day of December, 1908, committed to the county jail by L. R. Shean, county judge of Washita county, for a period of 60 days, as for contempt of court. On February 25, 1909, petitioner filed in this court a petition signed and verified by his oath, and which, omitting the formal parts, reads as follows:

"Your petitioner, J. P. Gudenoge, represents and states: That he is a citizen of the state of Oklahoma, and that he is restrained of his liberty and is unlawfully imprisoned and restrained at the county jail of Washita county in the city of New Cordell, in said state, by W. H. Griffin, sheriff of said Washita county. That the cause of said restraint, according to the best of the knowledge and belief of your petitioner is: A commitment issued on the 19th day of December, 1908, by L. R. Shean, county judge of said Washita county, committing your petitioner to said county jail for a period of 60 days from said 19th day of December, 1908, upon a pretended conviction of your petitioner for a contempt of court. A *copy* of said commitment is hereto attached, marked 'Exhibit A,' and made a part hereof. That the proceeding in which said alleged contempt of court took place was a pretended prosecution before said county judge, entitled as State of Oklahoma v. John Doe and Richard Roe, and was a wholly fictitious and nonexisting cause, no person being charged with the violation of law, but was an inquisition being held by said county judge, under authority given by section 4, art. 3, p. 604, of the prohibition law of Oklahoma for the years 1907 and 1908; and your petitioner was prior to the said 19th day of December, 1908, to wit, on the 10th day of December, 1908, subpœnaed to appear before said county judge to give evidence in said last above entitled proceeding as a witness.. That on said date, to wit, December 10, 1908, your petitioner appeared

before said county judge in obedience to said subpœna, and was sworn as a witness. That he did not refuse to produce any books or papers, nor did he refuse to answer any proper or legal question propounded to him as such witness, pertinent to the case, but did decline to answer certain, impertinent, improper and illegal questions; whereupon said county judge issued a commitment committing your petitioner to the county jail for a period of 10 days, as for contempt of court. That petitioner has been unable to obtain a copy of said last-named commitment, but avers that the same is in substance the same as 'Exhibit A' hereto, except that the time of imprisonment was fixed at 10 days, instead of 60 days, as in 'Exhibit A.' That on, to wit, the 19th day of December, 1908, your petitioner was taken before said county judge the county attorney being present, and was asked to be sworn in the same matter, and your petitioner informed said county judge that he had been once sworn, and could see no use in again being sworn; whereupon the county attorney asked him to affirm, which your petitioner declined to do on the ground that he had already been sworn in the matter, and stated that he did not see any use in being sworn again; whereupon said county judge at once signed the commitment, 'Exhibit A' hereto, the same being all made out with the exception of the signature of said county judge, committing your petitioner for contempt to the county jail, as shown by said commitment 'Exhibit A,' and your petitioner avers that he has been imprisoned on said proceedings in the county jail of said county ever since said 10th day of December, 1908, a period of about 55 days, and that he is still confined in said jail on said commitment, 'Exhibit A' hereto. That said commitment. 'Exhibit A,' is wholly void and said county judge had no jurisdiction or power under the Constitution and laws of this state to issue the same imprisoning your petitioner for a period of 60 days. That there was no order made adjudging your petitioner guilty of contempt, and if there was any such order made by the said county judge the same is not sufficient in law to justify said imprisonment, for the reason that said order was made without authority of law and is wholly void and does not show that petitioner was adjudged guilty of any offense against the laws of the state which would warrant a confinement in jail, or of any contempt of court which would justify punishment of any kind. That no accusation in writing accusing petitioner of contempt has ever been filed against

him. That petitioner has been confined in jail on account of the order of said county judge for more than 30 days. That said county judge did not have the authority or jurisdiction to commit petitioner to jail for contempt for a longer period than 10 days, which time the petitioner has served, and the time for which he could be legally imprisoned has expired. That said commitment 'Exhibit A' hereto, and by which your petitioner is now being held in jail, is void, for the reason that the same exceeds the power and authority and jurisdiction to commit as for contempt, of said county judge, and the same is so vague, uncertain, and indefinite that it cannot be ascertained therefrom what is meant. That said commitment for 60 days is void, in that it is not for a definite time, or until such time as your petitioner should perform any definite act. Wherefore your petitioner prays ·this honorable court to grant a writ of *habeas corpus*, and that he be discharged without delay from such unlawful imprisonment. Knott & Jones, Att'ys for Petitioner, Cordell, Okla., J. P. Gudenoge."

To which petition is attached "Exhibit A," which reads as follows:

"State of Oklahoma, Washita County. In County Court, State of Oklahoma v. J. P. Gudenoge, Defendant. The State of Oklahoma, to the Sheriff of Said County—Greeting: Whereas, on the 19th day of December, 1908, at the before county court, in and for the county and state aforesaid, the above-named defendant, J. P. Gudenoge, was by the judgment of said court convicted of the crime of contempt of court, and on the 19th day of December, 1908, was by said court adjudged to: (A) fined in the sum of 60 days in the county jail of said county: now therefore you are hereby commanded to take said J. P. Gudenoge into your custody and confine him in the jail of said county, (B) until the expiration of said term of 60 days, unless ordered by the court to release defendant before the expiration of said time. In testimony whereof, witness my hand and seal, this 19th day of December, 1908. L. R. Shean, County Judge. [Seal.]"

On February 25, 1909, the writ was allowed as prayed for, by the Presiding Judge of the ·Criminal Court of Appeals, and made returnable forthwith. Whereupon, on February 25, 1909, the respondent, W. H. Griffin, sheriff of Washita county, made and filed in this court his return to said writ duly verified, which, omitting the formal parts, reads as follows, to wit:

"In the matter of J. P. Gudenoge, *Habeas Corpus.* Return of Writ. Comes now W. H. Griffin, sheriff of Washita county, Okla., and for his return to writ of *habeas corpus* issued herein, states: That said J. P. Gudenoge was placed in his custody on the 10th day of December, 1908, by virtue of an order of the county court and a commitment issued by the judge of said court, and by virtue of said commitment and said order of the county court, copies of which are attached hereto as part hereof, marked 'Exhibit A and B,' respectively, said J. P. Gudenoge was held by the undersigned, said Exhibit A containing the full proceedings in said matter and showing the cause upon which said order and commitment was issued. That on the 19th day of December, 1908, the said J. P. Gudenoge was returned to the undersigned as sheriff of Washita county, Okla., for confinement in the county jail of said county, and has since been held by virtue of an order of the county court and a commitment issued by the judge of said court as of the said 19th day of December, 1908, copies of which order and proceedings of said court are attached hereto, together with the commitment issued by said county judge, marked 'Exhibit C and D,' respectively. In obedience to the writ of *habeas corpus* issued herein, I now produce the body of said J. P. Gudenoge before the judge of this court, to be dealt with according to law, together with the originals of my authority for said imprisonment. W. H. Griffin."

"Exhibit A. J. P. Gudenoge, being first duly sworn, testified as follows: Q. Well, Shorty, you were somewhat intoxicated a few days ago, and we want to know where you got your whisky. A. Well, sir; I got it at home. Q. Got it at home? A. Yes, sir. Q. Who did you get it from to carry it home? A. Well, I don't know that I care to answer that. Q. Well, there is no way to get around it. A. Yes, sir. Q. You know the law, that it is contempt of court if you don't answer it? A. Well, there is one thing I consider sacred, if anything, my principle. Q. That is your principle, shielding boot-leggers? A. My principle is, 'Do unto others as you would have them do unto you.' Q. Did you buy this whisky from somebody here in town? A. I refuse to answer. * * * *"

"Order. J. P. Gudenoge having been brought before the court on the 10th day of December, 1908, in obedience to a subpœna lawfully issued out of said court on the 8th day of December, 1908, and the said J. P. Gudenoge having been questioned as to where

he got intoxicating liquors, or from whom he got said intoxicants, and having refused to answer such questions, and often refusing to answer the same, although the said J. P. Gudenoge was cautioned as to the law in such case, and having still refused to answer said questions, after said law was read, and being admonished by the county attorney and the court: It is therefore ordered, adjudged, and decreed by the court that said J. P. Gudenoge is in contempt of court and is fined for said contempt in the sum of 10 days in the county jail and is herewith remanded to the custody of the sheriff until such term of 10 days is served or until said J. P. Gudenoge signify his willingness to answer said questions, providing said willingness is so signified by the expiration of said 10 days. L. R. Shean, County Judge."

"* * * Witness, J. P. Gudenoge, being brought before the court, refused to be sworn, as follows: Q. By the Court: Stand up and be sworn, Mr. Gudenoge. A. Why, Judge, do you ask me to be sworn? You caused me to swear myself in jail before. Q. Do you refuse to be sworn? A. Why Judge, you caused me to swear myself in jail before. Q. Do you refuse to be sworn or affirmed? (To which question the witness is silent and refuses to answer.) * * * "

Whereupon L. R. Shean, county judge, issues the order of commitment as shown by Exhibit A of the petition herein, which bears the following return:

"Officer's Return. Received the within writ on the 19th day of December, 19——, at 11 o'clock a. m., and executed on the 19th day of December, 1908, by J. P. Gudenoge in the Washita County Jail. Dated this 19th day of December, 1908. W. H. Griffiin, Sheriff."

It was agreed by the attorneys for petitioner and the county attorney of Washita county and the Attorney General that they would waive production of the body of the said petitioner before the Criminal Court of Appeals, at the city of Guthrie, Okla., and would waive the personal appearance of said respondent; and it was further agreed that said cause might be heard in the absence of said petitioner and respondent, and that said cause should be submitted upon the filing of briefs by both parties. On February 20, 1909, the cause was submitted.

*Knott & Jones,* for petitioner.—

*Habeas Corpus* as proper remedy: *Taylor v. Newblack,* 5 Okla. 647; *In re Patswald,* 5 Okla. 789; *Garner v. Territory,* 5 Okla. 379; *Ex parte Johnson,* 1 Okla. Cr. 414, 98 Pac. 461; *In re Mitchell,* 1 Kan. 643; 24 Kan. 218; 9 Cyc. 58.

*Chas. L. Moore,* Asst. Atty. Gen., *Fred S. Caldwell,* and *Ruthford Brett,* for respondent.

DOYLE, JUDGE. (after stating the facts as above). It is contended by counsel for petitioner: That the proceedings in which said alleged contempt of court took place were wholly fictitious; no person being charged with the violation of law. That it was an inquisition being held by said county judge under authority given by section 4, art. 3, c. 69, p. 604, Sess. Laws, 1907-08, otherwise known as the "Enforcement Act." That under the Constitution and this section of the law, it is necessary that some one be charged with a violation of the law. That there can be no issue in a wholly fictitious proceeding. That for this reason the question propounded to petitioner was not legal or proper, as it was too general and not confined to any person who had been charged with a violation of the prohibitory law. That the court or judge thereof was without jurisdiction or authority to issue said commitments, and that the proceedings in contempt under this statute and the punishment therefor are governed by the provisions of the Criminal Code.

Mr. Caldwell, counsel for the state, contends:

"That said section 4 of said enforcing act does not contemplate that there shall be any prosecution pending before witnesses can be examined as provided for in said section; that said section 4 of said enforcing act makes it mandatory upon the judge to entertain such proceeding whenever he is requested so to do by the county attorney; that in this case the matter being inquired into by the county attorney pertains to violations of said enforcing act; that a contempt of this sort is not, strictly speaking, a criminal contempt, but is rather a civil contempt; and that the proceedings in contempt under this statute, and the punishment therefor, are governed by the provisions of Procedure Civil."

He admits in his brief, however, that:

"It appears that the commitment under which the petitioner is held purports to impose upon him a definite and fixed penalty, to wit, confinement in the county jail for a period of 60 days. In this I think the judgment of the court is in error. However, inasmuch as the court undoubtedly had power and jurisdiction to order the petitioner re-confined in the county jail until he should express his willingness to comply with the commands of the court, even though the result might be his confinement there for the remainder of his natural life, and since it nowhere appears from the record in this case that petitioner has, at any time since his commitment for his failure to answer the question which he was directed to answer, answered, and the petitioner does not even allege in his petition such willingness to answer said question, I cannot see where he has been in any way prejudiced by the aforesaid irregularity in the commitment."

On this contention the question is: Was there a contempt committed, and did the county court, or judge thereof, have jurisdiction or authority to issue the commitment under which petitioner is now restrained of his liberty?

All courts have inherent power to punish for contempt. The statutes of this state provide (Wilson's Rev. & Ann. St. § 2125):

"Contempts of court shall be divided into direct and indirect contempts. Direct contempts shall consist of disorderly and insolent behavior committed during the session of the court and in its immediate view and presence, and of the unlawful and wilful refusal of any person to be sworn as a witness, and the refusal to answer any legal or proper question."

The cases generally further classify contempts of court as either "civil" or "criminal." The distinction between civil and criminal contempts is plainly drawn. A "civil contempt" is where a person fails or refuses to do something which he has been ordered to do for the benefit of the opposite party to the cause. The punishment by imprisonment is for the purpose of coercing the performance of the act. A civil contempt is instituted by a private individual for the purpose of protecting or enforcing his rights. The order in such a case is not in the nature of a punishment, but is coercive to compel him to act in accordance with the order of the court. A "criminal

contempt" embraces all acts committed against the majesty of the law, and the primary purpose of their punishment is the vindication of public authority and the dignity of the courts. In the case of a criminal contempt the proceeding for its punishment should conform as nearly as possible to proceedings in criminal cases. We cannot assent to the suggestion that the courts can, in criminal cases of this kind, adopt by analogy the penalty provided by the provisions of Procedure Civil for civil contempt. The contempt in this case did not consist in disobedience of some writ or order for the benefit of a private litigant. Refusal to answer a legal and proper question and to be sworn a second time are the acts averred, and the contempt, if contempt there be, is therefore criminal. It follows that the judgment pronounced was controlled by the provisions of the Criminal Code.

Every exercise of the power to punish a violation of a judicial order is, however, subject to one important qualification, namely, it is absolutely essential that the court making the order should have acted directly within jurisdictional limits, otherwise the disobedience of such an order will be no contempt. In the absence of jurisdiction the judgment is a nullity, and if the punishment be by imprisonment the contemnor will be released on the hearing of a writ of *habeas corpus. Ex parte Rowland,* 104 U. S. 604, 26 L. Ed. 861; *Ex parte Fisk,* 113 U. S. 713, 5 Sup. Ct. 724, 28 L. Ed. 1117; *Ex parte Crenshaw,* 80 Mo. 447. The rule, now supported by high and abundant authority and excellent reason, is that the court must not only have jurisdiction over the person and the subject-matter, but authority to render the particular judgment. *People v. Liscomb,* 60 N. Y. 559, 19 Am. Rep. 211; *Ex parte Degener,* 30 Tex. App. 566, 17 S. W. 1111; *Holman v. Austin,* 34 Tex. 668.

In a late work on Jurisdiction, the author, in discussing the three essential elements necessary to render a conviction valid, says:

"These are that the court must have jurisdiction over the subject-matter, the person of the defendant, and authority to render

the judgment. If either of these elements are lacking the judgment is fatally defective." (Brown on Jurisdiction, par. 110.)

"Such want of jurisdiction to render the particular judgment may arise either from a constitutional prohibition against the infliction of such punishment in such cases, or from the infliction of a punishment in excess of that, or the commitment may be for an indefinite time, or it may arise from the punishment, as a contempt of an act or default which in law is not contempt." · (A. & E. Encyc. [2d Ed.] vol. 7, p. 37.)

The Constitution of the state of Oklahoma, in its Bill of Rights, § 21 (Bunn's Ed. § 30), provides that:

"No person shall be compelled to give evidence which will tend to incriminate him, except as in this Constitution specifically provided."

And section 27 (Bunn's Ed. § 36) provides:

"Any person having knowledge or possession of facts that tend to establish the guilt of any other person or corporation charged with an offense against the laws of the state, shall not be excused from giving testimony or producing evidence, when legally called upon so to do, on the ground that it may tend to incriminate him under the laws of the state; but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may so testify or produce evidence."

Section 4, art. 3, c. 69, p. 604, Sess. Laws 1907-08 provides as follows:

"Sec. 4. It shall be the duty of any judge of the district or county court, upon a request of the county attorney, or upon the complaint of any other person, supported by affidavit, to issue subpœnas for any witnesses that may have knowledge of the violation of any of the provisions of this act, and such judge shall have power, and it shall be his duty, to compel such witnesses to appear before him and give testimony and produce any books or papers that will assist in the prosecution of any person who may be charged with violating any of the provisions of this act."

Said section further provides:

"Should any witness refuse to appear before such judge, in obedience to such subpœna, or refuse to produce any books or papers when lawfully required so to do, or having appeared, shall

refuse to answer any proper questions, or sign his testimony when so required, it shall be the duty of said judge to punish as for contempt in accordance with the constitution and laws of the state."

An inquisition under the provisions of said section 4 of said enforcement act is a proceeding special in its nature, and no presumption can attach in favor of its jurisdiction; and before petitioner could be held guilty of contempt it must be shown affirmatively that a criminal case was pending in which he was sworn as a witness. It is apparent from the language of section 27 of the Bill of Rights that the immunity therein granted to persons called to testify contemplates a charge against some person or corporation with a violation of the law; and the language of said section 4 expressly requires as a condition precedent that the request of the county attorney, or the complaint of other persons, be supported by affidavit, and while it is not essential that the complaint and affidavit designate by name the person or persons charged, if not known, the complaint should so state. We believe it is a prerequisite, under the Constitution and said law, that the proceedings under said section 4 of said enforcing act should be predicated upon a complaint supported by affidavit. The relations of petitioner to the subject of inquiry before the county judge, as shown by the questions put to him and his answers thereto, in connection with the penal provisions of the prohibitory law, entitled him to invoke the protection of section 21 of the Bill of Rights, unless section 27 of the Bill of Rights removes the protection of the constitutional privilege. Section 27 must be construed as declaring that no evidence obtained from a witness by means of a judicial proceeding shall be given in evidence, or in any manner used against him, in any criminal proceeding, or for the enforcement of any penalty or forfeiture. Similar constitutional provisions have received many interpretations in the federal and state courts, and the uniform holding has been that no statute which leaves the party or witness subject to prosecution, after he answers the criminating question put to him, can have the effect of supplanting the privilege conferred by the Constitution; however, in the view

we take of this case, we do not think it necessary to review the adjudicated cases.

It is apparent that in this case, and it is conceded by counsel for the state, that no person was charged with an offense against the laws of the state in the proceedings had before said county judge, and in the absence of this essential condition precedent, for the reasons hereinbefore stated, the witnesses could not be compelled to answer the question propounded. Whatever the power may be of the court or judge sitting in chambers, or whether that power be inherent or conferred by statute, to punish summarily for a contempt, persons guilty of criminal contempt, our Constitution and laws contemplate that the power shall be exercised only where the court or judge has jurisdiction of the person and the subject-matter, and without such jurisdiction the judgment is void.

The contention that said section 4 of said enforcing act makes it mandatory upon the judge to entertain such proceedings whenever he is requested so to do by the county attorney is not well taken. It will be noticed that said section 4 seeks to make this the duty of the district judges. The Constitution (section 183, Bunn's Ed.) takes from the district courts all jurisdiction, original and appellate, in misdemeanor cases, and gives jurisdiction to county courts, as follows:

"The county court shall have jurisdiction concurrent with justices of the peace in misdemeanor cases, and exclusive jurisdiction in all misdemeanor cases of which justices of the peace have not jurisdiction."

The absurdity of this contention is apparent when we consider that said section 4 seeks to make it the duty of the judge of a district court to investigate matters outside the jurisdiction of his court on the request of a county attorney, or upon the complaint of any other person supported by affidavit. We can hardly believe that the business of district courts could be interrupted in this manner, and the said section, in so far as it relates to district judges, is apparently in conflict with the foregoing constitutional provision

It has been deemed necessary, in order to prevent abuses of the power thus conceded, to prescribe and limit by statute the punishment to be imposed for contempts. The federal laws and laws of nearly all the states so provide. The statute of this state (section 2126, Wilson's Rev. & Ann. St. 1903) is as follows:

"Punishment for contempt shall be by fine or imprisonment, or both, at the discretion of the court; but the fine in no case shall exceed fifty dollars or imprisonment a longer term than ten days in the county jail; provided, that when any person shall be imprisoned for the nonpayment of a fine he shall be discharged at the expiration of thirty days."

Thus it will be seen that the county court or judge thereof was without power or authority of law to render the judgment and issue the commitment for 60 days, as was done in this case. This statute limits the duration of the imprisonment and the amount of the fine, and the punishment must conform to such limitation, and cannot exceed it. If there had been a criminal contempt, the judgment and sentence would still have been without authority of law.

From a consideration of the language of the constitutional provisions in the Bill of Rights referred to, and section 4 of the so-called "enforcement act," we are clearly of opinion that the petitioner was entitled to refuse, as he did, to answer. The examination of the record shows that the questions propounded are not in proper form, and assume the fact that petitioner carried whisky to his home. The commitment, as shown by Exhibit A, does not conform to the requirements of the statute. Section 2128, Wilson's Rev. & Ann. St. 1903, provides:

"Whenever a person shall be imprisoned for contempt the substance of the offense shall be set forth in order for confinement and made a matter of record in the court."

For the reasons hereinbefore stated, the writ of *habeas corpus* is hereby allowed, and the petitioner discharged.

FURMAN, PRESIDING JUDGE, and BAKER, JUDGE, concur.