## MRS. O. L. HARMAN v. STATE.

No. A-8955. March 20, 1936.
Rehearing Denied April 24, 1936.
(60 Pac. [2d] 404.)

Hickman & Ungerman and W. A. Chase, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Smith C. Matson, Asst. Atty. Gen., and Carl D. McGee, Co. Atty., for the State.

EDWARDS, P. J.   Plaintiff in error, hereinafter called defendant, was adjudged guilty of a direct contempt by the district court of Pawnee county and was sentenced to pay a fine of $250 and to serve 30 days in the county jail.

Defendant was a witness for the state in State v. Kennamer in the district court, wherein defendant in that case was being tried on a charge of murder.  Kennamer v.

State 59 Okla. Cr. 146, 57 Pac. (2d) 646. The conduct of defendant, when called as a witness, is the basis for this contempt proceeding. When sworn as a witness, she refused to testify; further, while on the stand, when counsel for defendant in the case then on trial was addressing the court, she interrupted in a loud and insolent manner, saying: "Mr. Moss, you are a liar." This conduct interrupted the decorum of the court and probably would have resulted in a mistrial except for the fact that defendant's counsel in the case then on trial expressly waived the right to a mistrial and agreed the case might proceed. The court, thereupon, ordered this defendant be held in jail to enable counsel for the state to investigate her connection with the matter and for further proceedings in contempt. On the following day the county attorney filed a complaint as for a direct contempt, which was by the court set for hearing for a later date and bail was fixed and made. The contempt matter was by agreement argued before the judge on questions of law, at Tulsa, who, at that time, informed counsel a demurrer to the complaint then presented might be filed, but that the contempt proceedings would not be based on the complaint. On the convening of the court in Pawnee county for consideration of the contempt, no consideration was given to the complaint or the demurrer thereto, but the court made a statement in the record of the conduct of defendant constituting the contempt, in part as follows:

It appearing to the court that on February 13, 1935, while the court was in session and a jury was in the box and the trial of Phil Kennamer on a charge of murder was in progress, Mrs. O. L. Harman having been duly sworn, was on the witness stand, and after having answered a number of preliminary questions, the following proceedings were had, to wit: 'Q. (By the County Attorney): Do you know the defendant, Phil Kennamer?'

The witness answered: 'Honorable Judge, I am afraid to testify in this case; my life has been threatened, and my family—I am afraid to testify in this case and I want to be excused from it. My family has been threatened time and time again in the last 24 hours, they have been threatened with death, and that they would get me if I get up and testify; they have had that threat put to them time and—' "

Whereupon the court admonished her as follows:

"Mrs. Harman, you have been subpoenaed here and you must answer the questions now as they are asked."

Whereupon the witness answered:

"I am sorry I will have to refuse. My children mean more to me than anything on earth and I will have to take whatever the penalty is. But when my little girl says to me, 'Mother, don't testify in this case.' They have called and told them, they have told my children they would kill them and kill me."

Thereafter, and after the jury had retired from the courtroom in charge of the bailiffs, and while said witness was still on the stand, Mr. Moss, attorney for the defendant, referring to the witness, stated to the court: "She endeavored to sell her testimony to the defendant in this lawsuit." Whereupon the witness, without being requested to make any statement, stated in a loud voice: "Mr. Moss, you are a liar." The court then stated in substance that he adjudged the said defendant to be guilty of direct contempt. The court, by reason of the foregoing facts, then stated that she was given an opportunity to be heard and show cause why she should not be punished for contempt.

Then follows a lengthy hearing, in which numerous witnesses testified for the purpose of excusing or mitigating the contemptuous conduct of defendant, and at the

conclusion thereof the court in his judgment recited fully the facts upon which the contempt was based, and as-sessed the punishment as stated.

Two assignments of error are argued: First, that the court erred in not proceeding on the written com-plaint. Second, that the punishment is excessive. These assignments will be discussed in the order presented.

Under the first assignment defendant's counsel con-tend the written complaint is insufficient and does not state a contempt under section 1956, O. S. 1931, and fur-ther that when a written complaint had been filed the court could not then proceed as for a direct contempt, but was limited to the written complaint and must proceed as for an indirect contempt. They admit, however, that the court had the power, at the time of the contempt, to adjudge defendant guilty and to assess punishment after an opportunity had been granted her to be heard; and fur-ther, that no formal written accusation was necessary if the court had proceeded summarily at the time. Counsel frankly state they are unable to support their contention by any authority other than the wording of section 1956, O. S. 1931, which, among other things, provides that a direct contempt "may be summarily punished as herein-after provided for." It is argued that unless the court summarily punishes for a direct contempt it is condoned and that a "summary punishment" means an immediate and instantaneous punishment as distinguished from the ordinary course, citing Gaines v. Travis, 8 N. Y. Leg. Obs. 45, 49. Upon this point counsel insist that the court, by ordering defendant committed at the time of the alleged contempt, in fact assessed punishment and had no power to further punish after hearing. People v. O'Brien, 196 Ill. 250, 63 N. E. 667.

Section 1956, O. S. 1931, defines "contempt."

Section 1957 is:

"Punishment for contempt shall be by fine or imprisonment, or both, at the discretion of the court."

Section 1958 provides:

"In all cases of indirect contempt the party charged with contempt shall be notified in writing of the accusation and have reasonable time for defense; and the party so charged shall, upon demand, have a trial by jury."

In Blanton v. State, 31 Okla. Cr. 419, 239 Pac. 698, 700, this court held:

"Contempts are classified and divided as 'civil' contempts and 'criminal' contempts. The distinction between 'civil' and 'criminal' contempts is this: The former consists in disobeying some judicial order made in the interest of another party to a proceeding. The latter consists of acts disrespectful to the court, or obstructive to the administration of justice, or calculated to bring the court into disrepute. In the case at bar, the order violated not being made for the benefit of any party to any litigation or matter pending in the court is not a 'civil' contempt, but is an act obstructive to the administration of justice, and is a criminal contempt. Gudenoge v. State, 2 Okla. Cr. 110, 100 Pac. 39."

Contempts are further classified as direct and indirect contempts. Section 1697, Comp. St. 1921 (section 1956, O. S. 1931), is as follows:

"Direct contempts shall consist of disorderly or insolent behavior committed during the session of the court and in its immediate view, and presence, * * * and the refusal to answer any legal or proper question."

The refusal of the defendant to answer a proper and legal question was a direct contempt. Her further statement made while Mr. Moss was addressing the court, "Mr.

Moss, you are a liar," in a loud and offensive and insulting manner, was also a direct contempt. The word "insolent" is defined to be, anything said or done rudely; saucy; insulting; abusive; offensive. The refusal of a witness to testify is an act obstructive to the administration of justice and therefore a criminal contempt. It then follows that the acts, conduct, and manner of the defendant in this case constitute a direct criminal contempt.

The proceeding in a case of direct contempt is not specifically provided for in either the Constitution or the statutes. In several cases this court has set out the proper practice. In Ex parte Sullivan, 10 Okla. Cr. 465, 138 Pac. 815, 821, Ann. Cas. 1916A, 719, it was said:

"That clause of section 25 of the Bill of Rights in question does not prescribe any form, nor require any characterization of the act charged as a contempt in order to confer jurisdiction, but it does require that an opportunity to be heard must be given before a penalty or punishment is imposed for contempt. In the absence of some requirement of the statute prescribing the manner or mode of hearing, in order to confer jurisdiction on the court to punish for contempts, committed in the presence of the court, we think that it would be sufficient if the contemner be arraigned and asked whether he has any legal cause to show why he should not be adjudged guilty of contempt of court."

In Ex parte Murray, 54 Okla. Cr. 437, 23 Pac. (2d) 220, 221, it was held:

"A direct contempt requires no formal charge, since the act constituting the contempt is in the immediate view, hearing, and presence of the court."

See, further, Moore v. State, 41 Okla. Cr. 310, 272 Pac. 1032; Lynn v. State, 38 Okla. Cr. 313, 260 Pac. 1069; Ex parte Dawes, 31 Okla. Cr. 397, 239 Pac. 689; Ex parte

Sullivan, 10 Okla. Cr. 465, 138 Pac. 815, Ann. Cas. 1916A, 719.

There is no merit in the contention that a direct contempt shall be finally disposed of by a finding of contempt, the hearing of the contemnor, and the assessing of punishment at the time it is committed. The power to punish summarily (section 1956, O. S. 1931) is permissive and not mandatory. A court is not required to suspend the trial of a case and conduct a hearing in contempt, but may postpone such hearing reasonably, and by so doing it does not lose jurisdiction. Ex parte Murray, supra; 13 C. J. p. 61, § 84; Id., p. 79, § 114; People ex rel. Platt v. Rice, 74 Hun. 179, 26 N. Y. S. 345; Gompers v. U. S., 233 U. S. 604, 34 S. Ct. 693, 58 L. Ed. 1115.

Upon the second assignment, that the punishment is excessive, counsel merely refer us to the record and state that inasmuch as the trial of the case then pending was not affected, the interests of justice would be served by a less severe punishment. The voluminous record in this contempt proceeding, which comprises upward of 300 pages, discloses that an important murder case was being tried in a county to which it had been moved by change of venue; that both the state and the defendant in that case had proceeded at great effort and expense to prepare for trial; that after a prolonged examination a jury had been selected. It was then a matter of grave import and concern, both to the state and the defendant, that the trial proceed in an orderly manner and without any misconduct on the part of witnesses or others that might result in a mistrial or in the committing of error which might necessitate the granting of a new trial, or require a reversal after trial. No credit is due defendant that her contemptuous conduct did not bring about such result. Orderly

trials and proceedings in court are not to be obstructed and nullified by whims or temperamental outbursts of witnesses or others. The administration of justice requires decorum and order. Contempt and disorder calls for severe punishment. We are satisfied the punishment assessed is not excessive, but, on the contrary, is reasonable and humane.

The case is affirmed.

DAVENPORT and DOYLE, JJ., concur.