COPELAND v. COPELAND.

No. 7546.   Opinion Filed September 12, 1916.

(159 Pac. 1122.)

DIVORCE—Custody of Children—Care of Parents.   When in an action for divorce a decree has been rendered granting the husband a divorce and awarding him the exclusive care, custody, and education of their minor son, and directing that the actual custody of said child be placed with the husband's parents, and according the wife the privilege of visiting said child twice each month without the hearing of and without interference from any person, and directing the husband's parents to treat her as a guest during the period of her visits, and when the right of visitation has not been accorded the wife according to the spirit and intent of the decree, the court has the authority to modify its order and place said child a portion of the time with the parents of the wife, they being in every way suitable, so that her right of visitation may be enforced.

(Syllabus by the Court.)

*Error from Superior Court, Pottawatomie County; Leander G. Pitman, Judge.*

Suit for divorce by Jack Copeland against Obie Copeland. There was a judgment for plaintiff, and the husband was granted exclusive care and custody of a minor child of the marriage. The order was subsequently modified, and plaintiff brings error. Affirmed.

*S. F. Bailey* and *Edward Howell,* for plaintiff in error.

*H. H. Smith,* for defendant in error.

HARDY, J.   Plaintiff in error was granted a decree of divorce from defendant in error in the district court of Pottawatomie county on the 26th day of October, 1914, and was awarded the exclusive care, custody and education of their minor child, Darrell Gaston, with directions that.the actual personal custody of said child should be with the father and mother of plaintiff in error, Mr. and Mrs. J. B. Copeland, granting to defendant in error the privilege of visiting said child at their home twice each month without the hearing or presence of any one and without interference, and directing the said Mr. and Mrs. Copeland to treat defendant in error kindly and as a guest during the period of her visits.

On March 29, 1915, there was filed in the trial court a motion to modify the order theretofore made so as to place the custody of said child one-half the time with the parents of defendant.   Much testimony was taken at the hearing, at the conclusion of which the court modified the order theretofore made, and awarded the custody of said child during the months of June and December to the parents of defendant, and for the remainder of the year the custody of said child was to continue as before.   It is from this order that error is prosecuted.

The entire case is presented in this court upon the theory that, the custody of this child having been placed with the father and mother of plaintiff, and no change having been shown in the condition of plaintiff or his parents, the court was without authority to modify the decree under the rule announced in *Stanfield v. Stanfield,* 22 Okla. 574, 98 Pac. 334. This contention requires a review of the evidence taken at the hearing. No attempt was made to show that plaintiff was an unfit person or that there had been any change in his condition, nor that the paternal grandparents were unsuitable, except as hereinafter pointed out. Evidence was introduced to show that Mr. and Mrs. R. L. Bristow, the father and mother of defendant, were in every way suitable; that they were peaceable, moral, industrious, law-abiding citizens; that Mr. Bristow was engaged in the mercantile business, and enjoyed the confidence and respect of those who knew him. Mr. Copeland was about 70 years of age and his wife was about 65. All their children were grown and were married, and they were rearing a girl about 14 years old. Mr. Bristow was 47 and his wife 44, and they had a family of seven children of various ages. Plaintiff was earning $45 per month as a clerk in a grocery, while Mr. Bristow was paying defendant as a clerk in his store $50 per month. After the litigation was commenced and the custody of the child was awarded to plaintiff with the privilege to defendant of visiting it, said child was taken to the home of Mr. and Mrs. Copeland. There is some controversy as to whether this was before or after the rendition of the final judgment. The trial court evidently took the view that this was after the former decree, and while the child was thus at the home of the Copelands, defendant, in company with her mother, Mrs. Bristow, visited the home of the Copelands for the purpose of being with her child.

While there Mr. Copeland remained in her presence, not permitting her to visit the child alone, and, according to the evidence of defendant, was mad during the entire time, treating her discourteously, swearing and using vile language, and stating to her in the presence and hearing of the child and her mother that she (defendant) ought not to have married his son, that she was not worthy of him, did not have any friends, and ought not to be allowed to see the child, and that this course of conduct and manner of talking was continued during the period of the visit. When they first arrived at the home of the Copelands Mrs. Bristow remained sitting in the buggy and asked defendant to bring the child to the buggy so she could see it, and Mr. Copeland refused to permit this to be done. At another time when defendant visited their home she stayed all night, and while at the evening meal requested the child to sit in her lap during the meal. Mr. Copeland interfered and forbade the child doing so, and when she attempted to take the child in her lap told her if she could not behave to leave the house. The child told defendant in the hearing of Mrs. Bristow that Mr. and Mrs. Copeland had told it not to like its mother. The third time she attempted to visit the child she arrived at the Copelands late one evening and was refused permission to stay that night. Upon this occasion she left with the child, going to various places, and being finally found in California. There was evidence tending to show that she was accompanied by a man named Campbell, with whom she occupied the same room at a rooming house for as many as two nights. While there she became sick and underwent an operation. Plaintiff, learning of her whereabouts, caused her to be arrested upon a charge of kidnapping. She then returned to Oklahoma without requisition papers and presented to the court her motion to modify the final order theretofore made, with the result stated.

The authority of the court to modify the order did not depend solely upon whether there had been any change in the circumstances of the person to whom the custody of the child had previously been awarded, but the court was authorized to inquire into the conditions existing and determine whether its order as to the right of visitation accorded the mother had been complied with, and, if not, to enforce said order by placing the child where such right could be enjoyed in accordance with the spirit of the order. The welfare of the child is an element which may always be considered in determining the right to its custody. Section 3331, Rev. L. 1910; *Jamison v. Gilbert*, 38 Okla. 757, 135 Pac. 342, 47 L. R. A. (N. S.) 1133.

In *Allison v. Bryan*, 26 Okla. 520, 109 Pac. 934, 30 L. R. A. 146, 138 Am. St. Rep. 988, the custody of an illegitimate child had been awarded to the father without the privilege of visitation being accorded to the mother. Thereafter, upon application to the court, the father was required to produce the child twice each month at the town of Norman in order that the mother might see the child alone and in the absence of any other person. Allison refused to comply with this order, and was adjudged guilty of contempt and appealed. In the discussion of the case this court, after reviewing a number of authorities, said:

"From the foregoing it will be seen that under practically every and all conditions the parents, in some instances the father, and in others the mother, while losing the right of custody of their children, have in every instance received at the hands of the court recognition of their right of visitation. It is true the foregoing cases, other than the opinion of this court, present those only in which the question arose between parents of legitimate children, but the underlying reason for the rule was in each instance that the one accorded the right was a parent,

and· that it was in accord with humanity and right ·living and the best interest of the child that it be not estranged."

The court quotes the language used in *Allison et al. v. Bryan,* 21 Okla. 557, 97 Pac. 282, 18 L. R. A. (N. S.) 931, · 17 Ann. Cas. 468, which was a case where *habeas corpus* had been sued out for the same child, and the custody held properly to belong to the father, where it was said:

- "We would not have it understood, however, that in thus declaring the law we hold he should not see his mother, be with her, or be permitted to enjoy her society, nor she his. Not at all. Under the judgment rendered in this case in the lower court provision was made for the father to visit the child, and the successful respondents should not be deaf to the common promptings of humanity which dictate that the child and the mother be granted the · utmost possible latitude for social communion consistent with the new duties placed upon all. In case of sickness or accident the mother should be promptly notified, and, if she desires, permitted to attend, care for, and nurse."

The trial court evidently entertained the view that its order permitting the mother to visit the child had not been complied with, and that the grandparents with whom the child was living were attempting to poison its mind against her, and were depriving her of the privilege of enjoying communion with the child according to the spirit and· purpose of the original decree.· Counsel say that by her conduct she forfeited her right to the custody of the child, and because no change has been shown in the condition existing at the time of the first order the modification·thereof was void. This is saying, in effect, that the affection of this mother for her child counts for naught, and that its welfare depends upon the financial condition of the person in whose custody it was placed, and will not be affected by being deprived of association with its mother and of the love which she entertains for and yearns to bestow upon it,

but will be best subserved by permitting a continuance of the conduct of its grandparents, who, according to defendant's claim, insult and taunt her in the presence of the child, and teach it not to like her.

The original decree directed that defendant be given the privilege twice each month of visiting the child and having it with her during the entire day out of the presence of and without interference from any person, and that she be treated as a guest during such visit. That this order has not been obeyed is manifest, in that during her visit the grandparents have not permitted her communion with the child to be out of their presence and without interference by them as directed, and the court, looking to the best interest of the child in making provision for communion with the mother so that its love for her might not be estranged, and that she should not become an object of aversion and hatred, had the right to modify its order and give such further direction as was necessary to effect its purpose. The child was the legitimate offspring of a lawful marriage between the parties and was of tender years, and, though the mother may have erred, her sin did not dry up the wellsprings of mother love and forfeit all right upon her part to visit with and enjoy the association of her own offspring. Neither does the law so declare, but it recognizes this right, so long as the welfare of the child will not be endangered thereby. It was said in *Allison v. Bryan, supra,* that "it was in accord with humanity and right living and the best interests of the child that it" be not estranged, and, according to the language used in *Allison et al. v. Bryan,* 21 Okla. 557, 18 L. R. A. (N. S.) 931, 17 Ann. Cas. 468, the "common promptings of humanity dictate that the child and the mother be granted the utmost

Copeland v. Copeland.

possible latitude for social communion consistent with the new duties placed upon all."

There is nothing in the evidence that makes it apparent that the moral or physical welfare of the child will be endangered by a compliance with the modified order. The maternal grandparents are morally fit and financially able to do as well by the child as the paternal grandparents, and entertain an affection for the child similar to that possessed for their own, and the defendant may there enjoy that association with the child without interruption which is her right by nature, and is dictated by the common promptings of humanity, and was accorded her by the original decree, but denied her by the acts of the paternal grandparents. Neither can the fact, as already stated, that she was adjudged not suitable to have the exclusive custody of the child, prevent the court from making the modification. In *Haley v. Haley*, 44 Ark. 429, the Supreme Court of Arkansas said:

"The privilege of visiting accorded to the mother is a plain dictate of humanity, in the absence of any reason to suppose that the privilege would be abused to the injury of the boy. There was none in this case. The charges of immorality against the mother were not sustained. She is shown to be an industrious, hard-working woman, and a good woman, by all the witnesses, except the defendant. But had it been otherwise the permission to visit would not be necessarily erroneous. The court should regard the maternal instinct in the veriest trull that walks the streets, taking proper care that it does not lead to corruption of the offspring. It is the strongest and holiest sentiment of humanity, the freest from selfishness or impurity, and often the last hope of redemption for fallen natures."

There was ample evidence to warrant the court in modifying the original decree, and the order appealed from is affirmed.

All the Justices concur.