MATTHEWS v. MATTHEWS.

No. 32092. March 11, 1947.

*178 P. 2d 95.*

E. C. Hopper, of Eufaula, and George H. Jennings, of Sapulpa, for plaintiff in error.

A. A. Davidson, of Tulsa, and Johnson & Jones, of Bristow, for defendant in error.

BAYLESS, J. This is a suit for divorce filed by the husband, Logan Matthews, against the wife, Madeline Mills Matthews. The wife cross-petitioned for divorce, and upon trial a divorce was granted to her. The custody of the minor child, a boy nine years old at the time of the trial in 1944, was awarded to her, with the privilege on the part of the father to visit the child at any reasonable and convenient time, provided he conducted himself properly on such visits, and a further provision that the father should have the care and custody of the minor child for a period of 60 days each year. The court also awarded the wife certain property hereinafter specified in payment of a debt which she claimed was owing her by the defendant, and awarded her certain other property as alimony and for the support of the minor child. The wife appeals from that part of the decree awarding the husband the custody of the child for the period of 60 days each year, and also from that part of the decree dividing the property.

In support of her contention that the trial court erred in awarding the husband the custody of the child for a period of 60 days during each year, the wife calls attention to testimony in the record which she says establishes that the husband is not a fit and proper person to have the custody of the child any portion of the time. She further con-

tends that divided custody is not conducive to the welfare of the child.

The record shows that the wife, in December of 1941, left the residence of the parties in Sapulpa and went to the home of her parents near the city of Eufaula, taking the child with her, and that since that time she has kept the child with her and has been supporting him and caring for him solely by her own efforts, the husband contributing nothing to the support of either her or the child. The evidence further shows that although these cities are less than 100 miles apart, the father visited the child only twice in the three years intervening between the time the wife left Sapulpa and the trial of the cause, and had written the child but one letter during that period. He testified that he had not visited the child more frequently because his wife made it unpleasant for him, but this is denied by the wife and is not borne out by other testimony in the record. It appears that the wife has surrounded the child with wholesome influences, and is taking proper care of his physical, mental, and moral well-being. There is no evidence that the wife is making any effort to turn the child against the father or to influence him in any way which would lessen his regard for his father.

In view of these facts we are of the opinion that the trial court erred in awarding the parents divided custody of the child. In Holdeman v. Holdeman, 191 Okla. 309, 129 P. 2d 585, we said that in awarding the custody of a minor child the court is to be guided by what appears to be for the best interests of the child in respect to its temporal, mental, and moral welfare, and held that where it was of tender years, divided custody was not for the best interest of the child. We think the rule therein announced is applicable to the instant case. When the child grows older, if it is made to appear that the order should be modified or the custody of the child, for any reason, changed, the trial court can modify the order to such extent as in his discretion is proper.

As to the division of the property, the record shows the wife testified that she made various contributions to assist her husband during their married life, and also contributed to a considerable degree to the support of the family during that time. Some of these contributions were admitted by the husband, but he denied that the wife contributed any such amount as she claimed, either to his business affairs or to the support of the family. The trial court found that the husband was personally indebted to the wife in the sum of $750; that the wife had in her possession a large diamond ring of the value of $800, belonging to the husband, and decreed that the wife should retain that ring in payment of such personal indebtedness. The court further allowed the wife, as alimony and for the support of the child, two smaller diamonds valued at $500 each, and real property of the defendant of the value of $1,500. In addition to this the court allowed the wife, as her separate property, the furnishings of the home, which she had purchased out of her own funds. In making the allowance for alimony and child support the court stated in his oral findings that if the property allowed was all applied to the support of the child it should last for a period of about seven years, and that the court would retain jurisdiction to fix a further sum if an emergency should occur at any time, or if at the end of the seven-year period the court should find that further child support should be allowed, or that the husband was then able to provide for the child's support.

The wife complains that this award by the court is not of sufficient value to constitute an allowance of reasonable alimony; that all the property awarded to her is impressed with the obligation to support the child, and that the trial court should have directed the husband to pay a certain amount for the support of the child, and a certain amount for

322

alimony or by way of division of the property.

We think the order made by the trial court was consistent with the wishes of the wife as expressed during the trial. In her direct examination, after testifying to the amount of money owing to her by her husband, she testified as follows:

"Q. Mrs. Matthews, what is your attitude about recovery of this money? For what purpose do you want it? A. I want it for Sam (the minor child). When we tried to settle, I said, 'Logan, just give me something for Sam.' Q. At this time, I will ask you this question, if this court awards you anything out of the little that is left of this property, are you willing to put that money into bonds or certificates solely for Sam's use and his education? A. Yes. Q. Of course, you realize when this property is gone the probabilities are you won't have any support money? A. Yes. Q. Do you want the property secured for the future support of Sam and for his education? A. Yes."

Furthermore, in the oral findings made in the presence of attorneys for both the husband and wife, the trial court, in connection with the award for alimony and child support, made the following statement:

"It was stated by the defendant's counsel in the trial of this lawsuit that they were not seeking anything except child support and what is owing to them."

It therefore appears that the finding by the court that the husband was indebted to the wife in the sum of $750, and the award of the diamond ring of the value of $800 in payment of that debt, was made on conflicting evidence, the only testimony relating thereto being that of the husband and wife, and from an examination of the record it does not appear that that finding is clearly against the weight of the evidence.

As to the award for alimony and support of the child, the record quoted above discloses that the trial court rightly understood that defendant did not seek a division of the property for herself, but only for the purpose of maintaining and educating the child. From the evidence it appears that the husband had, at various times, engaged in unsuccessful business ventures; that at the time of the trial certain property in the city of Sapulpa, together with two royalty interests which were producing no income, and the diamonds above referred to, constituted the entire estate of the husband, and that at that time he was not gainfully employed, but was endeavoring to establish himself in another business venture. The trial court, in dividing the property, apparently proceeded upon the theory that it would be unwise to divest the husband of all his property, and that by making provision for the support and education of the child for an approximate seven-year period the husband would be given an opportunity to re-establish himself, and be able to make further and perhaps larger contributions to the support of the child from that time forward. We think this was an equitable division of the property in accordance with the wishes of the wife, and that such division should not be disturbed by this court.

The judgment appealed from is modified by giving to the wife the exclusive care and custody of the minor child with the privilege on the part of the father to visit the child under the conditions specified under the decree and, as modified, is affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, OSBORN, CORN, GIBSON, and ARNOLD, JJ., concur. WELCH, J., dissents.

WELCH, J. (dissenting). I cannot agree with the majority that a boy past twelve years of age is necessarily "a child of tender years" as that expression is used in a contest between parents over custody of minor children. That rule is here applied and made the con-

trolling rule in reversing the trial court.

Perhaps no one can say just when a son ceases to be "a child of tender years," but I find no case where it has heretofore been held that such expressions applied to a boy past twelve. In California it was once contended that this expression or this classification should apply to a boy "now past ten years of age." The Court of Appeals denied that contention as shown by both syllabus rule and opinion, and the Supreme Court denied a rehearing. Russell v. Russell, 20 Cal. App. 457, 129 P. 467.

I think the trial court's order for divided custody should be affirmed and not reversed for any of the reasons stated and relied upon in the majority opinion. The minor son is now aged twelve years and two months. The trial judge had the parties before him and doubtless observed their attitude towards the boy and his towards each of them. It is clear to me the trial judge had in mind two points: (1) A desire to preserve to this boy both a father and mother, if possible, and sought to promote that purpose by divided custody. (2) It is apparent the trial court concluded it would be for the best interest of the boy to spend two months with his father during the summer school vacation period.

The trial court may have been right on both points, that is, it might work out well in this case to preserve and promote a father and son relationship by their spending some time together; too, it might actually work out for the best interest of the child to experience this divided custody at this period in his life. At any rate, the trial court so found and I would affirm, having in mind, of course, that at any time this plan of the trial court fails to work out profitably for the boy the trial court may change it.

In numerous cases we have approved the trial court's judgment fixing division of custody of minor children between parents. See Clark v. Clark, 177 Okla. 542, 61 P. 2d 28, and Seddicum v. Seddicum, 167 Okla. 420, 30 P. 2d 156, where in each case custody to the father during school vacation period was approved, although as in this case the father had been found guilty of extreme cruelty and gross neglect of duty and other misconduct justifying divorce. Divided custody was also approved in Mattox v. Mattox, 129 Okla. 301, 264 P. 898, and Copeland v. Copeland, 58 Okla. 327, 159 P. 1122. In the Clark Case and in the Copeland Case, supra, this court recognized the rule that such judgment for divided custody should not be reversed unless clearly against the weight of the evidence. In the Seddicum Case and the Mattox Case, supra, this court recognized the companion rule, according to the trial court a wide discretion in fixing divided custody for the best interest of the child and holding that such divided custody judgment should not be reversed unless found to be an abuse of the court's discretion. The majority opinion here reaches no conclusion that the judgment for divided custody was clearly against the weight of the evidence, and could not do so. In fact, there was but scant evidence on the particular point, the trial court apparently reaching its conclusion largely, if not entirely, from observing and hearing the testimony of the parents as to their differences one with the other, and as to their desires and intentions with reference to the child. Likewise, the majority opinion does not reach the conclusion that the trial court here was guilty of abuse of discretion, nor could the majority so find from the record, as I view it. I think the majority opinion is in serious error in merely substituting the belief or judgment of this court for the studied conclusion of the trial judge on this important matter of division of custody, without any conclusion here either that the trial court judgment was clearly against the weight of the evidence, or that the trial judge was guilty of an abuse of discretion.

It is true we reversed division of cus-

**324**

tody in the Holdeman Case cited, but there it appears the determination was dictated largely by the tender age of the child. The minor daughter there involved was three years old.

I think undoubtedly the controlling legal philosophy is that in some cases and under some circumstances, well considering the age of the child, divided custody might be highly desirable for the best interest of the child, while in other cases such divided custody would not at all be indicated as best for the child's interest, and in any such case there should be but one rule of law and that is to determine as nearly as may be what would be for the best interest of that child in that case.

In my judgment the majority opinion is further in error and is uncertain as to the attitude of this court, in that the trial court is encouraged as the child grows older, if circumstances are such as to justify, to enter an order dividing his custody between his parents. That is what the trial court has already done, and it is reversed in the manner stated by the majority.

Surely the better rule would be to approve the divided custody which the trial court has already found to be justified by the circumstances and found to be for the best interest of the boy. Thus a test could be had of the court's effort to best provide for this boy; with continuing authority as pointed out in the majority opinion for the trial court to make any future modification indicated to be necessary.

If division of custody here does work well and is for the best interest of this boy, then the studied judgment of the trial court is proven. On the other hand, if upon trial this plan does not promote the boy's best interest, the trial court can make prompt correction.

I think this court errs in condemning the plan of divided custody as to this boy, now past twelve years old, without trying it. In such a case no one may know with any degree of certainty what is or may prove to be for the boy's best interest. We are deeply concerned with it, as was the trial judge. We would follow precedent, and aside from that entirely, I think we would follow sound thought, if we go along with the trial judge in his effort, with his continuing jurisdiction, to better provide for the boy, and to promote his best interests, by whatever provision for his custody is, or may prove to be, for his betterment now and in future.