## WELLS v. WELLS.

No. 3111.    Opinion Filed November 18, 1913.

(136 Pac. 738.)

1.  **DIVORCE—Grounds—Extreme Cruelty—Evidence.**  In an action for divorce on ground of extreme cruelty by means of unkind and harsh treatment, the intent and ability of the accused spouse to inflict such cruelty and the susceptibility of the other spouse to such cruelty, as well as whether such other spouse is of a provocative disposition, are material points of inquiry; and in such case the trial court may take into consideration the demeanor and appearance of the parties at the trial.

2.  **SAME—Appeal—Scope of Review—Evidence of Cruelty.**  Where the state of the evidence adduced is such that the demeanor and appearance of the parties at the trial might be in effect determinative of the question of the sufficiency of such evidence to prove extreme cruelty, the decree of the trial court will not be disturbed.

(Syllabus by Thacker, C.)

*Error from District Court, Hughes County;*
*John Caruthers, Judge.*

Action by Phoebe A. Wells against Carl Richard Wells. Judgment for plaintiff, and defendant brings error.  Affirmed.

*Crump & Skinner,* for plaintiff in error.

*H. B. Moffit,* for defendant in error.

Opinion by THACKER, C.    Plaintiff in error, the husband, who was defendant in the trial court, being about 26 years old, and the defendant in error, the wife, who was plaintiff in the trial court, being about 22 years old, were married about June 19, 1910, and separated August 3, 1910; she leaving him.   On February 16, 1911, she commenced this action against him; and on August 7, 1911, obtained a decree of divorce and, besides $100 as suit money, judgment for $400 as alimony, upon evidence, including the reasonable inferences deducible therefrom in favor of the decree, showing, in effect, that the first positive and serious trouble arose between them on July 3, 1910, although he had at times been hurtfully indiffer-

ent toward her prior to that date; that prior to that date she was sick for about a week without receiving the sympathetic attention due her, and in one instance, when she expressed a desire for some "things" she needed, he got angry and went away, uptown, without getting them for her; that on July 3, 1910, she requested him to accompany her to church and, when he refused, took hold of his sleeve, in her insistence that he do so, whereupon he jerked loose, tearing his sleeve, exclaimed loud enough to be heard by the minister across the street, "God damn it! Turn me loose," and walked away in anger; that he was manager of a telephone exchange owned by his father, and when he came home therefrom to his meals was indifferent toward her and inconsiderate of her feelings, was cross, indisposed to talk to her, and ate his meals at times with his hat on, sometimes in silence, leaving also without speaking to her, thus manifesting a feeling of contemptuous aversion for her; that he never accompanied her out to any place, and when she called to see him at his place of business resented it, as if it were a personal offense, by leaving with the remark that he wished she would hurry up and get out of his way and, in one instance, when she called on him to get him to tell her "some things," said he was tired of her "durned foolishness," also of her "damned foolishness," and that he had petted her a long time before they were married, but was going to quit it; that on several occasions, once when a Miss King was at their home, he told his wife to leave him and their home, and when she asked what cause she had given for his desire to thus rid himself of her, he would only say, "I know;" that on at least one of two occasions, when she asked him for money with which to pay some debts she owed when they were married, he cursed her in connection with his refusal; that his treatment caused her mental anguish and she lost thirteen or fourteen pounds in weight as a result; and that she is without fault in this regard.

The trial court found that the husband was guilty of extreme cruelty and was amply able to pay the suit money and the amount of alimony adjudged against him; and we will not disturb the decree. The intent and ability of the husband to hurt

by his conduct and the susceptibility of the wife to hurt therefrom, as well as her disposition to provoke such conduct, depending in a measure at least upon their characters, including their mentalities, their sensibilities, and their physical make-ups, in this respect, could best be determined in the light of their demeanor and personal appearance at the trial; and the trial court had these parties before it and could better judge them in this respect than can this court. The statement of Justice Dunn, in the opinion in *Stovall v. Stovall,* 29 Okla. 125, 116 Pac. 791, that "actions, conduct, and appearances often speak louder than words in cases of this character," is equally applicable in a case like this, where there is no conflict or opposing explanation in the evidence, as in that case, where there was such conflict and opposing explanation; and the quotation in that opinion from section 1270 of Moore on Facts is especially pertinent here. The evidence in the present case, aided by the personal impression received by the trial judge from the demeanor and appearance of the parties before him, might have been, and we must assume was, in the peculiar state of the evidence, sufficient to support and justified the finding that the husband was guilty of extreme cruelty to the wife; and such conduct as that of which he was guilty might be either the acme of cruelty in one case or the almost hurtless manifestations of the want of educational preparation for the marriage relation which a few years, at most, in the school of actual experience would completely overcome in another case—depending in a large measure upon questions of characters of parties in this respect.

The husband's answer consists of denials of the allegations of the petition, with incidental charge that the wife deserted him without just cause, and he offered no evidence upon the trial; but we cannot assume, in view of the decree, that this was because he loved his wife and wanted her back, with the opportunity it would afford him to make amends—he made no such offer to take her back.

The amount of suit money and alimony allowed was not excessive, but, on the contrary, was much less than might have been allowed without presenting the appearance of excessive-

ness, if, as we must assume in the light of the evidence, there was no error in granting the divorce.

We are of the opinion that the judgment of the trial court should be affirmed.

By the Court: It is so ordered.