# J. P. CANNON v. STATE.

No. A-8849.  Feb. 21, 1936.
(55 Pac. [2d] 135.)

452

W. W. Pryor and W. C. Hall, for plaintiff in error.
The Attorney General, for the State.

DOYLE, J. Plaintiff in error was by Geo. C. Crump, judge of the district court of Hughes county, on the 15th day of October, 1934, adjudged to be in direct contempt of court and to pay a fine of $50. To reverse the judgment, he prosecutes this appeal.

It appears from the record that there was a civil case pending in said district court entitled J. W. Hundley et al. v. J. P. Cannon, which involved certain property rights and easements in the town of Calvin. On the 15th day of October there was filed in the office of court clerk for and on behalf of the defendant his motion to disqualify the judge in said cause.

On the same day, all the parties appearing, proceedings were had as follows:

"Let the record show, Mr. Court Reporter, that the court orders a hearing on the application or motion to disqualify.

"J. P. Cannon being called to the stand by the court and after having been first duly sworn, testified in connection with said motion to disqualify, to wit:"

Here follows an examination by the court, in part as follows:

"By the Court: Q. Mr. Cannon, I notice that you filed a motion to disqualify the court in case No. 9601. Did you read that motion before you signed it? A. Yes, sir. Q. Did you thoroughly understand it? A. Well, I think I did. Q. You state in this motion, among other things, 'that J. W. Hundley lives and resides in the town of Calvin, and has resided there for a number of years and during all of that period of time that he has been in business deals with W. T. Anglin, the purported advisor and dictator to George C. Crump.' Did you understand that statement? A. Yes, sir. Q. Well, now, who told you that Mr. Anglin was my dictator? A. Well, just from

general speaking, from over the county it seemed that way. Q. Well, who prepared this affidavit? A. Judge Pryor. Q. Did he advise you in that? A. He didn't advise me on anything. Q. What did you tell him? A. I told him I wasn't willing to be tried and you on the bench. Q. Why? A. With Anglin & Stevenson and J. W. Hundley my opponents. Q. Of course, now, that is a pretty serious charge against the court and a serious charge against a member of the bar of this county. A. Well, that is just like I feel about it. Q. Well, now, I am going to charge you with contempt, predicating it upon this affidavit, for contempt of court—for contemptuous and malicious conduct. Now, have you got anything to say why sentence of the law should not be pronounced upon you? Mr. Pryor: Well, may it please Your Honor, as to the answer or plea to that, we will ask that if the court has any charges to file against him that the court file them that we may answer to them. The Court: Well, I have already filed them. I am taking his motion to disqualify this court and from these contents and the record evidence, which is by the stenographer taken, and that the court, in this county, at this time, in this state, charges the defendant, J. P. Cannon, with contemptuous conduct for filing the following affidavit in this case:

" 'Comes now the defendant J. P. Cannon and moves the court to disqualify and vacate the bench in the above styled cause for the following reasons:

" '1. That the defendant lives and resides in the town of Calvin, Hughes county, Oklahoma, and has so lived and resided there for thirty-two years; that the defendant J. W. Hundley lives and resides in the town of Calvin and has resided there for a number of years and during all that period of time has been in business deals with W. T. Anglin, the purported advisor and dictator to George C. Crump; that this defendant knows of the relationship existing between the trial judge and W. T. Anglin, the attorney for the said J. W. Hundley, and feels and believes that he cannot have a fair and impartial trial on said account before the said George C. Crump, District

Judge, on account of the bias and prejudice in favor of the plaintiff and against this defendant existing in the mind of the said George C. Crump.'

"Now, the court charges that in this affidavit and motion to disqualify your conduct is contemptuous and malicious, and willful, and that there is not a word of truth in it.

"Now, what do you have to say? Guilty or not guilty?

"The Witness (Mr. Cannon) : I am not guilty.

"The Court: Not guilty. Have you any testimony now to offer in support of your defense?

"Mr. Pryor: We will ask time to prepare for trial in this case and time to file response to the charge of the court and an opportunity to produce our testimony, and right of trial by jury.

"The Court: That will be denied. It is within court.

"Mr. Pryor. We except.

"The Court: The defendant was present when the affidavit was filed this morning, in open court, and was present when you presented it. Any testimony?

"Mr. Pryor: Not right now. We will be ready for trial if given time to get our testimony here.

"The Court: This was in the presence of the court following the Lynn case in which you were instrumental and wherein the defendant Lynn committed the conduct in the presence of the court.

"It will be the judgment and sentence of the law as pronounced by the court that you pay a fine of $50.00, and that you stand committed until that fine and cost is paid.

"Mr. Pryor: To which action of the court Mr. Cannon excepts.

"The Court: Fifteen days will be given in which to prepare and serve case-made. Supersedeas bond will be

fixed at $250.00, to be approved by the clerk. The defendant stands committed until bond is approved by the clerk.

"Now, the temporary restraining order in this case will be passed until the 15th day of January, 1935.

"Mr. Bailiff, take charge of this man and keep him in your custody until he makes this bond.

"Mr. Pryor: Can he remain and step into the court clerk's office in time to make bond?

"The Court: I don't care what the baliff does with him just so he makes bond. If he doesn't make bond in a reasonable time, take him up to jail."

The errors assigned question the jurisdiction of the court or the judge thereof to render the judgment appealed from, in that the trial judge had no lawful right to try the cause for contempt, because he was disqualified by reason of prejudice, and no complaint was filed nor citation to the defendant to show cause why he should not be punished for contempt; and that the court erred in denying the defendant time in which to present his defense and "in denying the defendant a jury trial."

It would serve no useful purpose to review all these questions. It is said that, under the common law, the jurisdiction of courts is a part of the power inherent in the state by virtue of its sovereignty and susceptible of no limitation not imposed by the state itself.

Contempts of court in this state are governed by constitutional and statutory provisions and not by common-law rules.

Section 25 of the Bill of Rights (article 2), abrogates the doctrine that proceedings to punish for contempts are sui generis. There is perhaps no other state with a Constitution containing a provision similar to this provision.

So it may be said that this constitutonal provision is sui generis.

It will be observed that the first clause of section 25 of the Bill of Rights (article 2), interpreted by its own terms, has a meaning perfectly clear and definite. It constitutes a plain and clear grant of power to the Legislature to regulate proceedings in contempt. It reads:

"The Legislature shall pass laws defining contempts and regulating the proceedings and punishment in matters of contempt."

Having thus delegated the power to the Legislature to regulate the proceedings and punishment in matters of contempt, the framers of our Constitution went further. They provided:

"That any person accused of violating or disobeying, when not in the presence or hearing of the court, or judge sitting as such, any order of injunction, or restraint, made or entered by any court or judge of the state shall, before penalty or punishment is imposed, be entitled to a trial by jury as to the guilt or innocence of the accused."

In the third and last clause they provided: "In no case shall a penalty or punishment be imposed for contempt, until an opportunity to be heard is given"—thus prescribing that which the plainest dictates of natural justice must prescribe to every tribunal the law, that "No man shall be condemned unheard." Ex parte Owens, 37 Okla. Cr. 118, 258 Pac. 758, 810.

It is essential to the validity of the proceedings in contempt, subjecting a party to a fine or imprisonment or both, that they show a case in point of jurisdiction within the provisions of the law by which such proceedings are authorized. Cress v. State, 14 Okla. Cr. 521, 173 Pac.

854; Emery v. State, 29 Okla. Cr. 29, 232 Pac. 128; Ex parte Dawes, 31 Okla. Cr. 397, 239 Pac. 689.

In Ex parte Sullivan, 10 Okla. Cr. 465, 138 Pac. 815, Ann. Cas. 1916A, 719, it is said:

"Under that clause of section 25 of the Bill of Rights, providing, 'In no case shall a penalty or punishment be imposed for contempt, until an opportunity to be heard is given,' an opportunity to be heard before a penalty or punishment is imposed for contempt is an indispensable essential to the administration of due process of law as contemplated by the constitutional inhibition that 'No person shall be deprived of life, liberty, or property, without due process of law.' Section 7, Bill of Rights."

The Legislature, to effectuate this provision of the Bill of Rights, has defined what acts or omissions shall be deemed contempt. Article 31 of chapter 15, St. 1931 (Penal Code), entitled "Contempt." We quote this article:

"Contempts of court shall be divided into direct and indirect contempts. Direct contempts shall consist of disorderly or insolent behavior committed during the session of the court and in its immediate view, and presence, and of the unlawful and willful refusal of any person to be sworn as a witness, and the refusal to answer any legal or proper question; and any breach of the peace, noise or disturbance, so near to it as to interrupt its proceedings, shall be deemed direct contempt of court, and may be summarily punished as hereinafter provided for. Indirect contempts of court shall consist of willful disobedience of any process or order lawfully issued or made by court; resistance willfully offered by any person to the execution of a lawful order or process of a court." Section 1956.

"Punishment for contempt shall be by fine or imprisonment, or both, at the discretion of the court." Section 1957.

"In all cases of indirect contempt the party charged with contempt shall be notified in writing of the accusation and have reasonable time for defense; and the party so charged shall, upon demand, have a trial by jury." Section 1958.

"Whenever a person shall be imprisoned for contempt the substance of the offense shall be set forth in the order for his confinement, and made a matter of record in the court." Section 1959.

In cases of direct contempt under the constitutional and statutory provisions, the contemnor being present in court, neither a formal charge against him in writing or process is required; only an opportunity to be heard is given. No record is made other than the judgment, in this, as the statute provides, "the substance of the offense shall be set forth in the order for his confinement and made a matter of record in the court." This provision can only mean that the order of commitment must contain a recital of those facts which make it a direct contempt, and is mandatory in its terms. Ex parte Dawes, supra.

Construing section 1956 in Ex parte Owens, supra, it is said:

"In the case at bar we expressly hold that the first clause of section 25 of the Bill of Rights, and the statute (section 1697) defining direct and indirect contempts and specifically enumerating what acts shall constitute contempt, limits the power of the courts to the punishment of contempts of the character defined in the statute, and in the mode and to the extent provided by other provisions of the Penal Code to which reference herein is made."

In the case of State v. District Court, 76 Mont. 495, 248 Pac. 213, 214, it was held that the filing of an affidavit of disqualification against the trial judge in cause at issue but when court was not in session for the purpose of hearing that cause, even if contempt, is not committed "in the

immediate view and presence of the court," and the court is without jurisdiction to punish for contempt without filing affidavit or statement required in cases of indirect contempt.

In the case of In re Wood, 82 Mich. 75, 45 N. W. 1113, the offense consisted of delivering a written statement amounting to a contempt to the clerk of the court, during the noon recess of the court. This was held an indirect and not a direct contempt.

In the case of Wofford v. State, 33 Okla. Cr. 288, 243 Pac. 988, 989, it is said:

"Since the facts contained in the charge did not occur in the immediate view and presence of the court, the proceeding attempted to charge defendant with an indirect criminal contempt. It is necessary that a proceeding to punish for indirect criminal contempt under section 25, art. 2, of the Constitution and sections 1697 and 1699, Comp. St. 1921 [sections 1956 and 1958, Sts. 1931], be instituted by affidavit, complaint, or information setting forth the facts upon which the charge is based. Where contempt is predicated on affidavit filed with the court or judge, or oral testimony under oath given before the court, a statement of the charge in writing by the court or judge will suffice. Upon the filing of such affidavit, complaint, information, or statement, the accused shall be notified in writing of the accusation and shall have a reasonable time for defense, and upon demand shall have a trial by jury."

The filing of an affidavit of disqualification against a trial judge in a case pending or presenting the same does not come within the purview of "disorderly or insolent behavior committed during the session of the court, and in its immediate view and presence," and the court is without jurisdiction to summarily punish as for a direct contempt.

Our Code of Criminal Procedure provides:

"No person can be convicted of a public offense, unless by the verdict of a jury, accepted and recorded by the court, or upon a plea of guilty." Section 2672, St. 1931.

In a proceeding for contempt of court, if the contemnor is found guilty, the punishment imposed is a sentence in a criminal case. Such adjudication is a conviction, and the commitment in consequence thereof is in execution, of sentence for a criminal offense. Burnett v. State, 8 Okla. Cr. 639, 129 Pac. 1110, 47 L. R. A. (N. S.) 1175.

In Hosmer v. State, 24 Okla. Cr. 312, 218 Pac. 164, 168, it is said:

"It is clear, then, that, in a contempt proceeding, the right of the accused to a 'hearing,' within the meaning of the term as used in our Constitution, is more than the right to make a mere verbal explanation, or to listen to a speech from the bench by an interested judge denouncing the conduct of the accused. It includes the right to introduce evidence and have that evidence considered. The denial of that right to the accused in this case, in support of his plea of not guilty, was error. The record indicates that the accused was not accorded a 'hearing' as is contemplated by our Constitution."

Justice, if it be justice, must be even-handed; the scale must balance.

In Ex parte Ellis, 3 Okla. Cr. 220, 105 Pac. 184, 185, 25 L. R. A. (N. S.) 653, Ann. Cas. 1912A, 863, this court held:

"Under the declaration of article 2, § 6, Bill of Rights, that 'Right and justice shall be administered without sale, denial, delay, or prejudice,' as well as by the unwritten dictates of natural justice, the courts of this state are commanded to administer justice without prejudice."

And that:

"Public confidence in our judicial system and courts of justice demands that causes be tried by unprejudiced and unbiased judges, and a denial of a change of judge, applied for on the ground of prejudice, will be presumed to be a denial of justice."

To effectuate this command of the Constitution, the Legislature enacted article 21 of chapter 17, Procedure Criminal, which provides, among other things, that a judge of any court of record shall be disqualified to sit in any cause or proceeding when in any wise interested or prejudiced. Section 2911.

Upon the record before us the proceedings disclose that the trial court or judge thereof failed to act in accordance with the mode required by law in adjudging the defendant guilty of contempt of court and ordering him into custody, and, in so doing, acted without authority of law and in violation of the constitutional and statutory rights of the defendant.

The judgment appealed from is therefore reversed.

DAVENPORT, J., concurs.

EDWARDS, P. J. I concur in the conclusion, but dissent as to the statement of law in the fourth and ninth paragraphs of the syllabus.