### Ex parte CLEM H. STEPHENSON.

No. A-11249. Aug. 31, 1949.

(209 P. 2d 515.)

428

430

Clem H. Stephenson, of Wewoka, and Harry Stephenson, of Okemah, for petitioner.

Phillips & Frerichs and Ross & Ross, all of Okemah, for respondent.

BRETT, J. This is an original action in habeas corpus brought by Robert L. Stephenson, alleging that he is unlawfully restrained and confined in the county jail, by the sheriff of Okfuskee county, Okla. To his petition a response was made by J. W. Kennedy, sheriff of Okfuskee county, Okla. From said response it appears that the petitioner's restraint arose under the following facts: On the 5th day of June, 1943, a decree of divorce was granted Helen Stephenson from the petitioner herein. In said decree the care and custody of the minor child of said parties, Patricia Stephenson, was exclusively confided in the mother and the petitioner herein was "enjoined from interfering with the plaintiff or the child in her custody, except" the right of visitation "at its mother's home at reasonable times", provided he caused no trouble to the plaintiff. From this decree the petitioner herein appealed to the Supreme Court of the State of Oklahoma, which said court, on May 15, 1946, affirmed the decree of the trial court. It appears that the petitioner obtained physical custody of the child, following the decree by the district court of Okfuskee county, Okla., on June 5, 1943; before the said court could reduce its decree to writing, that the petitioner removed said child from the state and has concealed said child from the court ever since the rendition of said decree on June 5, 1943.

It further appears that subsequent thereto the parties above submitted themselves to the jurisdiction of the district court of Harris county, Tex., in a similar action wherein the petitioner prevailed, and Helen Stephenson appealed, which appeal resulted adversely to her. In the decree therein rendered the custody of said Patricia Stephenson was confided in the petitioner herein. The Okla-

homa court's jurisdiction is not in question and we are not concerned with the Texas proceedings.

On May 21, 1949, it is undisputed that the petitioner brought Patricia Stephenson into Okfuskee county, Okla., and that at said time she was visiting in the home of petitioner's parents in Okemah. Upon being advised by verified petition for habeas corpus of the fact that said child was within its jurisdiction, the district court of Okfuskee county issued the following order:

"County of Okfuskee,
State of Oklahoma,          } No. 11,966

"To The Sheriff Of Okfuskee County, Oklahoma:

"A verified petition for habeas corpus having been filed in this court on the 21 day of May, 1949, in the District Court in and for the county of Okfuskee, Oklahoma, by Ross & Ross, attorneys for Helen Rogers, nee Stephenson, charging that Robert L. Stephenson is unlawfully and illegally holding Patricia Stephenson, a minor, in violation of an order of this court in case No. 10720, you are therefore commanded forthwith to arrest the above named Robert L. Stephenson and to take immediate custody of Patricia Stephenson, a minor, and bring them before this Court forthwith to be dealt with according to law.

"Given under my hand, with the seal of said court affixed, this 21 day of May, 1949.

"(Signed)    Jess I. Miracle
"District Judge."

The sheriff executed said order on said date at about 10 p.m., by arresting and taking into custody Robert L. Stephenson. He could not execute the order in relation to the child, she having been removed to the State of Kansas, near Winfield, the present home of the petitioner, before said order was served.

On Monday morning, May 23, 1949, the matter came on for hearing before Honorable Jess I. Miracle, judge of the district court, on said verified petition and order. The petitioner filed a special appearance and plea to the jurisdiction of the court, and motion to quash, both of which the trial court overruled. Then a request for the disqualification of Judge Miracle was made and overruled. The petitioner then requested sufficient time to procure certified copies of the decree from the district court of Harris county, Tex., before proceeding to trial on the matters, which request was likewise refused. Whereupon the respondent asserts, and which is not denied by petitioner, that the trial court thrice asked the following question "Will you immediately bring the baby into the court", to which the petitioner twice gave no answer and the third time replied "I could not do so myself", whereupon the record shows the trial court without a hearing adjudged the petitioner in direct contempt of court, and ordered him to jail in the custody of the sheriff, until the petitioner produced said child. Thereupon the trial court entered its order of confinement in conformity with the provisions of Title 21 O. S. A. 1941 § 569, detailing the substance of the offense.

Respondent attacks the jurisdiction of this court, contending that the contempt herein involved arises out of a civil action, and that therefore, the Supreme Court would have jurisdiction of the habeas corpus proceeding brought by the petitioner to obtain his release from jail for contempt. He cites in support thereof Ex parte Herrin, 67 Okla. Cr. 104, 93 P. 2d 21, 22:

"Generally, in matters arising out of the criminal jurisdiction the Criminal Court of Appeals exercises jurisdiction in habeas corpus cases. In matters arising out

of the civil jurisdiction the Supreme Court exercises this right."

That case did not involve a contempt proceeding, is not in point, and an attempt to apply the broad general rule therein to contempt cases can only lead to confusion. It cannot be denied that in all criminal cases, and in none other, this court has exclusive jurisdiction. The question as to whether we have jurisdiction herein is, therefore, one as to whether the contempt with which the defendant is charged is criminal or civil. The statutory definition of contempts as applicable to the facts herein is as follows:

"* * * Direct contempts shall consist of disorderly or insolent behavior committed during the session of the court and in its immediate view, and presence, and of the unlawful and wilful refusal of any person to be sworn as a witness, and the refusal to answer any legal or proper questions; and any breach of the peace, noise or disturbance, so near to it as to interrupt its proceedings, * * * and may be summarily punished * * *. Indirect contempts of court shall consist of wilful disobedience of any process or order lawfully issued or made by court; resistance wilfully offered by any person to the execution of a lawful order or process of a court." Title 21 O.S.A. 1941 § 565. And § 1390, Title 12 O.S.A. 1941, as follows, to-wit:

"An injunction granted by a judge, may be enforced as the act of the court. Disobedience of any injunction may be punished as a contempt, by the court or any judge who might have granted it in vacation. An attachment may be issued by the court or judge, upon being satisfied, by affidavit, of the breach of the injunction, against the party guilty of the same, who may be required, to pay a fine not exceeding two hundred dollars, for the use of the county, to make immediate restitution to the party injured, and give further security to obey the injunction; or, in default thereof, he may be committed

to close custody, until he shall fully comply. with such requirements, or be otherwise legally discharged."

This section of the statute respondent did not elect to invoke. Instead the contempt action was brought under the provisions of Title 21 O.S.A. 1941 § 565.

The foregoing statute, while definitive of direct and indirect contempts, did not lay down the distinction as between civil and criminal contempts, but the line between acts constituting criminal and those constituting civil contempts is very distinct. The confusion in attempts to classify civil and criminal contempts is due to the fact that there are contempts in which both elements appear. 17 C.J.S., Contempt, § 5, p. 7. The distinction cannot be made solely because the contempt action may be incident to a civil, criminal or special proceeding; for civil or criminal contempts may arise out of either. The real test for classification is that civil contempts consist in failing to do something ordered to be done by the court in a civil action for the benefit of the opposing party therein, and is therefore an offense against the party in whose behalf the violated order was made. A civil contempt is an infringement on the right of a private person or persons. If, however, the contempt consists in doing a forbidden act, injurious to the opposite party, the contempt may be considered criminal. 17 C.J.S., Contempt; § 7 p. 8. Flathers v. State, 7 Okla. Cr. 668, 125 P. 902. A criminal contempt is an offense against the public or society by conduct that is directed against the dignity and authority of the court or judge acting judiciously, obstructive of the administration of justice, and disrespectful to the majesty of the state. 17 C. J. S., Contempt, § 5, p. 7. Ex parte Gudenoge, 2 Okla. Cr. 110, 100 P. 39; Flathers v. State, supra; Blanton v. State, 31 Okla. Cr. 419, 239 P. 698, where in addition

to making the foregoing classification this court pointed out that a civil contempt may be either direct or indirect and a criminal contempt may be either direct or indirect. Moreover, therein it was said:

"But the violation of an order not made for the benefit of any party to the litigation on a matter pending in the court is not a civil contempt, but is an act obstructive to the administration of justice and is a criminal contempt."

See, also, Brown v. State, 89 Okla. Cr. 443, 209 P. 2d 715. Direct contempt is a crime, Smythe v. Smythe, 28 Okla. Cr. 266, 114 P. 257, and the punishment therein constitutes a sentence in a criminal case. Deskins v. State, 62 Okla. Cr. 314, 71 P. 2d 502; Cannon. v. State, 58 Okla. Cr. 451, 55 P. 2d 135.

In civil contempts the punishment by imprisonment is for the purpose of coercing the performance of an act compensatory or remedial for the benefit of the opposite party. In criminal contempts the primary purpose is punishment in vindication of public authority, the dignity of the court and the majesty of the state.

In light of the foregoing principles, it is clear that the conduct of the petitioner from the date the decree was entered has been that of open defiance and utter disrespect of the majesty and dignity of the Oklahoma courts, in violating the order vesting custody of Patricia Stephenson in her mother. The sheriff as respondent is confused in attacking the jurisdiction of this court herein. He is confused as to the purpose for which this contempt proceeding for violation of the court's order is brought. He says in regard to the writ of habeas corpus, "this old remedy is used not to punish nor hurt but to be of benefit to the parties concerned. Who is the party most concerned? It is this child, Patricia Stephenson, * * *",

hence, his error in assuming that this matter is one that involves a civil contempt and his assertion that this court has no jurisdiction. Patricia Stephenson is not a party to this action, except incidentally. Only the father and mother are parties to the divorce action. The decree for the custody of Patricia Stephenson was not made for either of them, but was made for the welfare and the best interests of the child, Matthews v. Matthews, 198 Okla. 320, 178 P. 2d 95; Lutke v. Lutke, 198 Okla. 131, 176 P. 2d 496; irrespective of the personal desires of the parties to the divorce action. See, also, 27 C.J.S. Divorce, § 309, p. 1171, for numerous cases. It is therefore clear that the order made and entered conferring custody of the child upon one of the parties to the divorce action is not an order made for the benefit of said party in whom custody is confided. The question of custody is one of public interest. It therefore follows that the failure to obey an order conferring custody of the child to the other party in a divorce action is not an offense against a private person, but an offense against the express will of the state, and criminal in its nature, either direct or indirect, depending upon whether the contempt is committed in or out of the presence of the court.

Respondent contends that the order for custody is analogous to an order to pay alimony, costs, attorneys fees, and cites in support thereof the following cases: Wells v. Wells, 46 Okla. 88, 148 P. 723; Wells v. Wells, 39 Okla. 765, 136 P. 738; Wells v. State, 9 Okla Cr. 326, 131 P. 725; Ex parte Townsend, 177 Okla. 286, 59 P. 2d 279; Ex parte Plaistridge, 68 Okla. 256, 173 P. 646; Ex parte Bighorse, 178 Okla. 218, 62 P. 2d 487. In this he is in error. The analogy does not exist, and the cases cited are not in point. It is universally held that the failure to pay alimony, attorneys fees, and to

convey property to a party to a divorce action constitutes a failure to obey an order of the court ordering the doing of something for the benefit of a party to the action. Such is not the case at bar. Here, we are confronted with an order made in the interest of the administration of justice, the failure to perform which, is an offense against the public will as expressed through its courts, is obstructive of the administration of justice, against the dignity and majesty of the state and constitutes criminal contempt. We are therefore of the opinion that the respondent's contention that this court is without jurisdiction in this proceeding is without merit. The conclusion that this is a criminal contempt is confirmed by one of the cases cited by the respondent, Smythe v. Smythe, Oklahoma Supreme Court, supra, in which case that court held:

"Appearing in court in response to a writ of habeas corpus, and refusing to produce the body of a child pursuant to the requirements of said writ, without a reasonable excuse, or willfully making an evasive or insufficient answer thereto, is a contempt committed in the presence of the court.

"(a) A proceeding to punish for such contempt is a criminal action."

Petitioner next contends that under the provisions of art. 7, § 19, Constitution, the writ of habeas corpus is void. The pertinent provisions thereof are as follows:

"The style of all writs and processes shall be 'The State of Oklahoma.'"

He cites in support thereof the following cases: Bishop v. State, 47 Okla. Cr. 249, 288 P. 363; Murray v. State, 47 Okla. Cr. 219, 287 P. 781; Woods v. State, 46 Okla. Cr. 288, 287 P. 769; Folsom v. Mid-Continent Life Insurance Co., 94 Okla. 181, 221 P. 486; Martin v. Hos-

tetter, 59 Okla. 246, 158 P. 1174. To which may be added Eslick v. State, 70 Okla. Cr. 196, 105 P. 2d 554; Stewart v. State, 71 Okla. Cr. 292, 111 P. 2d 200. These cases hold that this provision is mandatory. With these cases we are in complete agreement, but it is well to observe that they all apply to processes issued generally by the clerk of the court. The object of the Constitution in requiring process to run in the name of "The State of Oklahoma" is to exclude any other or foreign power or private person from the exercise of such authority. The foregoing provision is directed at ordinary writs issued by the clerk as an arm of the court. It gives authenticity to the writ issued by him. But when it clearly appears from the record, as it does in the case at bar, that the writ of arrest in aid of habeas corpus was actually issued, "Okfuskee County, State of Oklahoma," by the district judge over his signature, within his jurisdiction and with authority of law, no question of authenticity arises. This is all the Constitution requires. Arie v. State, 1 Okla. Cr. 666, 100 P. 23, 33. To hold otherwise would defeat the intent and purpose of the writ of habeas corpus which is an extraordinary writ to effect a speedy release of one held in unlawful restraint. In keeping with this principle, under which the writ of arrest herein involved was issued, are the provisions of Title 12 O.S.A. 1941 §§ 1348, 1349, as follows:

"§ 1348. Whenever it shall appear by affidavit that anyone is illegally held in custody or restraint, and that there is good reason to believe that such person will be carried out of the jurisdiction of the court or judge before whom the application is made, or will suffer some irreparable injury before compliance with the writ can be enforced, such court or judge may cause a warrant to be issued, reciting the facts, and directed to the sheriff

or any constable of the county, commanding him to take the person thus held in custody or restraint, and forthwith bring him before the court or judge, to be dealt with according to law.

"§ 1349. The court or judge may also, if the same be deemed necessary, insert in the warrant a command for the apprehension of the person charged with causing the illegal restraint."

To obviate a plea in any habeas corpus proceeding, such as we are herewith confronted, it is provided in Title 12 O.S.A. 1941 § 1353, as follows:

"* * * And no writ or other process shall be disregarded for any defect therein, if enough is shown to notify the officer or person of the purport of the process. Amendments may be allowed, and temporary commitments, when necessary."

The writ to which this section refers is the writ of habeas corpus, since the section appears in the chapter providing for the writ of habeas corpus. The writ in the case at bar meets the requirements of the foregoing section. It is amply sufficient to notify the petitioner of the purport of the process, as well as of the fact that it emanated from the district court of Okfuskee county, Okla., and the judge thereof. In keeping with the provisions of the last quoted section, the writ should accordingly be amended by showing the same to run in the name of "The State of Oklahoma". To permit the contention of the petitioner in this regard to prevail would in many cases amount to not only a curtailment but a denial of the writ of habeas corpus by delay, incident to subtle and metaphysical judicial interpretation and be violative of the spirit, if not the letter, of the provisions of art. 2, § 10 of the Constitution as follows:

"The privilege of the writ of habeas corpus shall never be suspended by the authorities of this State."

We so hold, for we do not think it was within the intention of the framers of our Constitution, or the Legislature, to curtail the privileges of the writ of habeas corpus, which is the greatest of all writs. It was invoked by Englishmen before Magna Charta, recognized in the common law, and incorporated in our Constitutions, both state and federal. It is so sacred that not even the procedural requirements of the Constitution should be permitted to impair its effectiveness, hence the provisions of Title 12 O.S.A. 1941 § 1353, in relation to amendments to the writ. We are convinced it was not the intention of the Constitution makers to create a situation by procedural prescription so as to impair the effectiveness of the writ of habeas corpus, and we will not so construe art. 7, § 19, in derogation of the right of one entitled to invoke the writ of habeas corpus. To hold otherwise would make of what was intended as a shield against the unlawful issuance of process a shackle to relief against unlawful restraint and thus perpetuate unlawful restraint in violation of speedy release. The law should not be so construed as to make of a constitutional shield against wrongdoers a shackle or of a constitutional shackle against wrongdoing a shield. The petitioner's contention that the writ of habeas corpus and all proceedings are void because said writ did not run in the name of the State of Oklahoma as applied to the case at bar is without merit.

The final proposition urged by the petitioner is the trial court failed to grant him a hearing as required by art. 2, § 25 of the Bill of Rights to the Constitution, the pertinent part of which reads as follows:

"In no case shall a penalty or punishment be imposed for contempt, until an opportunity to be heard is given."

This contention is well grounded. It is supported by the plain provisions of the Constitution and many cases construing the same. In Ex parte Sullivan, 10 Okla. Cr. 465, 138 P 815, Ann. Cas. 1916A, 719, in syllabus 1 this court said:

"Under that clause of section 25 of the Bill of Rights, providing, 'In no case shall a penalty or punishment be imposed for contempt, until an opportunity to be heard is given,' an opportunity to be heard before a penalty or punishment is imposed for contempt is an indispensable essential to the administration of due process of law as contemplated by the constitutional inhibition that 'No person shall be deprived of life, liberty, or property, without due process of law.' Section 7, Bill of Rights."

The foregoing rule is followed in numerous cases in which opinions were rendered subsequent to its announcement in Ex parte Sullivan. Here the petitioner was not given a hearing as provided by law, he was charged, tried and condemned without an opportunity to be heard. There are many distinguishing features between proceedings for direct and indirect contempt, such as no formal charge is necessary in a direct contempt. Harman v. State, 59 Okla. Cr. 267, 60 P. 2d 404. In direct contempt proceedings no process is necessary to jurisdiction. Lynn v. State, 38 Okla. Cr. 313, 260 P. 1069. Moreover, in a direct contempt the accused is not entitled to a jury trial. Pryor v. State, 48 Okla. Cr. 91, 290 P. 345; Moss v. Arnold, 63 Okla. Cr. 343, 75 P .2d 491; Deskins v. State, supra; Dancy v. Owens, 126 Okla. 37, 258 P. 879; State ex rel. Attorney General v. Owens, 125 Okla. 66, 256 P. 704, 52 A.L.R. 1270. While in all indirect contempts the law requires a formal charge in writing as notice, that the accused have reasonable time for defense, and upon demand a trial by jury. Title 21 O.S.A.

1941 § 567; Wofford v. State, 33 Okla. Cr. 288, 243 P. 988; Blanton v. State, supra; and Emery v. State, 29 Okla. Cr. 29, 232 P. 128; Ex parte Hibler, 139 Okla. 157, 281 P. 144; Dancy v. Owens, supra; State ex rel. Attorney General v. Owens, supra. But the right to a hearing is common to both direct and indirect contempts, and it is error to deny such hearing before condemnation. Article 2, § 25, Constitution, Bill of Rights, referred to supra. Deskins v. State, supra; Moss v. Arnold, supra; Ex parte Owens, 37 Okla. Cr. 118, 258 P. 758, 810; Cannon v. State, supra; Pryor v. State, supra; Moore v. State, 41 Okla. Cr. 310, 272 P. 1032; Ex parte Reily, 60 Okla. Cr. 217, 62 P. 2d 1035. Here, the petitioner was condemned without a hearing, and was denied his constitutional rights in violation of due process. The other questions herewith presented, and not discussed herein, are without substantial merit. The writ is accordingly granted, with directions that the petitioner be accorded a hearing on the direct contempt charge as by law provided.

JONES, P. J., and POWELL, J., concur.