Whit PATE, Plaintiff in Error,

v.

The STATE of Oklahoma, Defend-
ant in Error.

No. A–13952.

Court of Criminal Appeals of Oklahoma.

June 14, 1967.

E. E. Thompson, Poteau, and Thomas Dee Frasier, Tulsa, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Hugh H. ·Collum, Asst. Atty. Gen., for respondent.

PER CURIAM.

The plaintiff in error, Whit Pate, who shall hereinafter be referred to as defendant, was subpoenaed before a Grand Jury in Oklahoma County, Oklahoma; called for the purpose of investigating purported bribery and "pay-offs" in connection with a horse racing bill presented to the Oklahoma Legislature.

Defendant refused to answer questions propounded to him before the Grand Jury on the grounds that the answers would tend to incriminate him. In other words, he ·claimed his privilege under the Fifth Amendment as it pertains to self-incrimination. The Grand Jury reported this to the District Judge presiding over said ·Grand Jury. The defendant was called before the Judge, who had the question repeated and after hearing, granted defendant immunity and directed him to answer the questions before the Grand Jury. Defendant again appeared before the Grand Jury; the same questions were again propounded, and defendant still refused to answer on the grounds that his answer would tend to incriminate him. He was again called before the Judge, who set a day certain to hear the reasons, if any, why defendant did not obey the directions of the Court, and why he should not be sentenced for Direct Contempt of the Court. After a lengthy hearing, in which defendant advanced numerous reasons why the Court did not have the authority nor right to sentence him for Direct Contempt of Court, the trial judge sentenced defendant to serve a term in the county jail consisting of 46 days.

Defendant objected to the proceeding and his most paramount contention was that the Court was without jurisdiction in the matter. This was clearly indicated by defense counsel, as is reflected by pg. 32 of the transcript where the jurisdiction was first questioned. Defendant contended that he could not be compelled to testify under Article 2, Section 27, of the Oklahoma Constitution, unless there were charges filed against some other person.

The state relied upon the same section of the Constitution in contending that defendant could be made to testify to incriminating matters before a grand jury, even though no charges were pending against any person.

It is quite apparent that this provision of the Constitution needs a clear interpretation; and to settle the question before us, an earnest endeavor will be made to eliminate whatever confusion may exist.

There are two sections of our Constitution that relate to this subject: Article 2, Section 21; and, Article 2, Section 27. Section 21 of Article 2, reads as follows:

"No person shall be compelled to give evidence which will tend to incriminate him, except as in this Constitution specifically provided; nor shall any person, after having been once acquitted by a jury, be again put in jeopardy of life or liberty for that of which he has been acquitted. Nor shall any person be twice put in jeopardy of life or liberty for the same offense."

This section which permitted a person to assert his privilege against self-incrimination has long been the subject of many critics. The general public labors under the misapprehension that one who asserts this constitutional privilege is guilty of some 'wrong doing', or is covering up the commission of some crime and think of him as a guilty culprit. Yet a review of its origin teaches otherwise, and that innocent people may assert the privilege. The history of the right against self-incrimination reveals its true purpose was to protect the innocent.

"We will first consider the origin and history of and the reasons for the principle involved in section 21 of the Bill of Rights of the Constitution of Oklahoma [this section], which directs that 'No person shall be compelled to give evidence which will tend to incriminate him, except,' etc. This is but a reiteration of the common law. Under the Angle-Saxon rule in England, the bishops, on account of their supposed learning and goodness, sat as judges and entertained suits in the popular courts; but during the eleventh century they were required to decide their causes according to the ecclesiastical law. From this there sprang up in England two separate systems and a double judicature. At first trials were conducted by compurgation and by ordeal, but those modes of trial were abolished during the thirteenth century. The ecclesiastical courts then resorted to inquisitorial and incriminating questions addressed to the accused. What was known as the Court of Star Chamber was established in 1487, which was the successor to and which followed the precedents established by the ecclesiastical courts. In 1606 Sir Edward Coke was made Chief Justice of the Court of Common Pleas of England. He first began to resist the encroachments made by the Court of Star Chamber upon personal liberty with its inquisitorial questions. This contest culminated in 1637 when one John Lilburn was committed to prison by the counsel of the Star Chamber because he declined to take an oath which required him to answer inquisitorial questions. Lilburn subsequently presented a petition to Parliament demanding redress for the treatment which he had received at the hand of the Court of Star Chamber. The illegality of his sentence was argued upon the ground that to require a man to be his own accuser was contrary to the laws of God, of nature and of the Kingdom. The House of Lords ordered that the sentence pronounced against Lilburn should be 'totally vacated, as illegal and most unjust against the liberty of the subject and the law of the land and the Magna Charta.' Three thousand pounds was awarded him as reparation for the injury done. A law was enacted which forbade any court from compelling witnesses to answer inquisitorial questions as to matters penal which would involve the incrimination of the witness. This is the origin of the common law providing that no witness shall be compelled to give evidence which will tend to incriminate him." Scribner v. State, 9 Okl. Cr. 465, 132 P. 933.

Re-examination of the history of the Fifth Amendment of the United States Constitution has emphasized anew that one of the basic functions of the privilege is to protect innocent men; and, too many, even those who should be better advised, view this privilege as a shelter for wrong-doers'. They too readily assume that those who invoke it are either guilty of crime, or commit perjury in claiming the privilege.

In spite of their erroneous belief, the privilege serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances. See, Griswold, The "Fifth Amendment Today". Also, see, Ullman v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511–518.

Article 2, Section 21 makes it crystal clear that no person shall be compelled to give evidence which will tend to incriminate him. In other wise, he shall not be compelled to be a witness against himself.

Article 2, Section 27, which is herein involved, has been the subject of much confusion by those who have at-

tempted to enlarge upon its meaning by reading things into it that are not there; reads as follows:

"Any person having knowledge or possession of facts that tend to establish the guilt of any other person or corporation charged with an offense against the laws of the State, shall not be excused from giving testimony or producing evidence, when legally called upon so to do, on the ground that it may tend to incriminate him under the laws of the State; but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may so testify or produce evidence."

This section is not in conflict with the previous section [21] but only deals with a person who has knowledge of facts that *tend to establish the guilt* of *any other person charged with an offense* shall not be excused on the grounds it might tend to incriminate him. Section 27 is in clear, concise language and is not difficult to understand, if read in its true sense. The trouble occurs when an effort is made to read things into it or expand its meaning. It distinctly sets forth the requirements: First, "a person must have facts or knowledge tending to establish the guilt"; Second, "of any other person or corporation"; Third, "charged with an offense against the laws of the State"; Fourth, "when legally called upon so to do".

■ When these elements are present, then a person may not be excused from testifying before a court in which the other person is charged upon the grounds said testimony may tend to incriminate him.

■ The trial court is then vested with jurisdiction to compel him to testify and he may not be prosecuted or subjected to any penalty or forfeiture for or on account of said testimony.

However, by the same token, when these elements are not present, no court has jurisdiction to compel a person to testify or hold him in Contempt if he refuses.

This has been well-stated in the case of Ex parte Driggs, Okl., 325 P.2d 72, (1958) wherein the Court said, at pg. 75:

"Here the petitioner refused to answer a question not tending to establish the guilt of some other person, but of himself. Admittedly, no charge or complaint was pending against any other person, *which obviously* is required under Sec. 27, art. 2 of our Constitution, supra, and it has been so held. Ex parte Gudenoge, supra. [2 Okl.Cr. 110, 100 Pac. 39] Therein, the petitioner refused to answer questions tending to establish the guilt of another."

The Court further said:

"Thus, a construction of art. 2, Sec. 27 of the Oklahoma Constitution has yielded the rule that unless a complaint has been made, supported by affidavit, charging a crime committed, a witness at an inquisition need not answer an incriminatory question."

Therefore, this Court is bound by the rule that a charge must be pending against some other person before a person can be compelled to testify to incriminatory matters, and until the pre-requisites heretofore stated are present, the trial court is without jurisdiction to punish one for failure to testify.

■ In the Driggs case, supra, the Court said, with reference to jurisdiction in Syllabus 1:

"Every exercise of the power to punish a violation of a judicial order is, however, subject to one important qualification, namely, it is absolutely essential that the court making the order should have acted directly within jurisdictional limits, otherwise the disobedience of such an order will be no contempt. In the absence of jurisdiction the judgment is a nullity, and if the punishment be by imprisonment the contemnor will be released on the hearing of a writ of habeas corpus."

■ It is obvious that in the *absence of a complaint or charge* pending against *some other person* at the time defendant was

*legally called upon* to give incriminating evidence, the judge was without jurisdiction to compel defendant to testify to such matters, and also, the order committing defendant to jail for 46 days was a nullity.

■ To support their contention, the State relies upon Scribner v. State, supra, 9 Okl.Cr. 465, at pg. 475, 132 P. 933 at pg. 936, wherein Judge Furman stated in the dictum of said opinion: "Looking to the meaning, purpose and spirit of the Constitution, we are of the opinion that a grand jury investigation of a crime comes within the purview of the term 'charged with an offense', as used in section 27 of the Bill of Rights of the Constitution of Oklahoma." Though this was only recited in the dictum of said case, we cannot subscribe to this as law, and repudiate it as such.

The State's other contention involves the time in which to appeal. The State claims the proceeding to be in the nature of a misdemeanor. The defendant's petition was filed in this Court March 19, 1966. The judgment and order committing defendant was rendered November 15, 1965. The time in which to appeal a misdemeanor is 120 days from judgment and sentence, and 6 months in which to appeal a felony case. The Supreme Court of Oklahoma has said in Fulreader v. State, Okl., 408 P.2d 775, at pg. 777, an appeal of a contempt charge is neither criminal nor civil in character, but is "Sui Generis" in nature. The unusual nature of the appeal of a contempt charge leaves some doubt as to whether the appeal was lodged in time. However, it will not be necessary to discuss the question herein, because defendant requested this Court to consider the petition as a Writ of Habeas Corpus, because of the jurisdictional question, if we should find the appeal out of time.

It is, therefore, the decision of this Court that the trial judge had no jurisdiction to hold defendant in Contempt, and the commitment was a nullity and should be held for naught, AND IT IS SO ORDERED.

In arriving at this conclusion and since there is a serious question of whether the Legislature can by Statute enlarge upon the provisions of the Constitution limiting the granting of immunity to a witness testifying when such evidence would tend to incriminate a person charged with the commission of a crime, we recommend that the Legislature, if they so desire, give serious consideration to a constitutional amendment which (a) would authorize the granting of immunity to a witness appearing before a grand jury; (b) authorize the granting of immunity to a witness appearing before a Legislative Committee acting within the scope of its constitutional authority; and, (c) granting immunity to a witness when his testimony would establish the innocence of a person charged with the commission of a crime.

■ The Legislature has authority to conduct hearings which would present arguments as to the wisdom—or lack of wisdom—of referring these proposals to the citizens of Oklahoma by way of referendum, and we are confident that they will take such action as they deem appropriate.