Joe L. ROSELLE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A-17319.

Court of Criminal Appeals of Oklahoma.

Nov. 28, 1972.

Guy Secor, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Yvonne Sparger, Asst. Atty. Gen., for appellee.

## MEMORANDUM OPINION

BUSSEY, Presiding Judge:

Appellant was convicted in the District Court of Cleveland County, Oklahoma of the crime of Contempt in summary proceedings on the 20th day of September 1971 before District Court Judge Elvin Brown, who fixed Appellant's punishment at a fine of One Hundred Dollars ($100.-00).

■ This purported appeal must be dismissed under the rules of this Court for two reasons. First, the original record reflects no formal judgment and sentence filed in this case, a jurisdictionally fatal omission. Baker v. State, Okl.Cr., 496 P. 2d 1195 (1972).

The second reason grows out of a question of first impression in the state of Oklahoma; that is whether contempt is to be classed as a misdemeanor or a felony, which question was raised in the Attorney General's Motion to Dismiss and the subsequent response to the motion by the Appellant.

The record reflects that the Appellant was attorney of record for one Leona T. Miller in Case No. CRF–71–420, set on the Cleveland County District Court docket for trial at 9:00 a. m. on the date in question before Associate District Judge J. David Rambo. The court Minute reflects a sixty-six (66) member jury panel was asked to wait and that the Appellant appeared at 9:15 a. m. The record also reflects the Appellant was then taken before Judge Brown and asked if he had any excuse for being late, and was also asked whether or not it was the first time he had made an appearance in that court. The Appellant replied, "No," and then was asked:

"BY THE COURT: Mr. Roselle, is there any reason known to you why the Court should not hold you in contempt?

"BY MR. ROSELLE: Well, I don't know. If the Court wants it that way—

"BY THE COURT: I consider that you have willfully disobeyed the order of the Court.

"BY MR. ROSELLE: (No answer)

"BY THE COURT: Does your clock now show it to be 9:15?

"BY MR. ROSELLE: My clock shows it to be 9:10. I am sure that your clock is correct.

"BY THE COURT: Mr. Roselle, when we have cases set at 9:00, we expect the lawyers and parties to be present. Only an act of God excuses. Poor planning is not defensible. Our cases are set at 9:00, and the Court finds you in contempt and fixed your punishment at a fine of $100."

Judge Brown's signed Bench Minute further reflects the statement that:

"On being asked by the Court if he had cause to show why he should not be punished for contempt, he answered that if the Court was going to put it that way, he guessed not. He was found guilty of contempt for voluntarily and non-accidentally interferring with the administration of justice by neglecting to appear at the published hour, thus delaying and hindering jurors, witnesses, litigants, attorneys and Court personnel. His punishment was fixed at a fine of $100."

■ Without reaching the merits of the question whether the record supports a finding of direct criminal contempt, we will observe that this Court has held that direct contempt is a crime and that criminal contempt is an offense against the public or society by conduct that is directed against the dignity and authority of the court or a judge acting judicially, obstructive of the administration of justice and disrespectful to the majesty of the state. Ex parte Stephenson, 89 Okl.Cr. 427, 209 P.2d 515 (1949).

The statutory construction and conclusion advanced by the Attorney General in the State's Motion to Dismiss is not persuasive, although we agree with the conclusion that direct criminal contempt is a misdemeanor. It is interesting to note that the Appellant's response to the motion put him in the position of arguing that the

crime of which he stands convicted is a higher grade of crime, that is to say, a felony rather than a misdemeanor, but we are unable to agree with either his reasoning or his conclusion.

■ The Legislature fixed the punishment for contempt as follows: "Punishment for contempt shall be by fine or imprisonment, or both, at the discretion of the court." 21 O.S.1971, § 566. Neither the punishment section nor the statutory definition of contempt found at 21 O.S. 1971, § 565 specifies whether or not contempt is a felony or misdemeanor. Nor does the punishment section of this statute, as is in the case with most felonies, specify that imprisonment shall be in the state penitentiary, which is clearly a felony situation. Therefore, we must define the term "imprisonment." This Court adopted the reasoning of an early Oklahoma case in Carr v. State, Okl.Cr., 359 P.2d 606 (1961), wherein the Court stated:

"' * * * the word "imprisonment", in its ordinary sense, contemplates and means without the common jail, rather than the penitentiary.' "

Based upon the foregoing where the word "imprisonment" is used without more, that is to say, an indication in the statute that the imprisonment is to take place in the state penitentiary or that it is to be for a period of time in excess of one year or that the crime is defined in the statute as a felony, that the place of imprisonment will be the county jail and therefore, we conclude that the crime of Contempt is a misdemeanor.

■ Having concluded that Contempt is a misdemeanor offense, we are then within the Court's rules with regard to the computing of time. They require that the petition in error and accompanying documents be filed within 120 days of the date of judgment. In this case, by Appellant's own pleadings wherein he states that he did not pick up the transcripts until 165 days after the judgment and sentence, this purported appeal is more than a month out of time and must be dismissed.

Inasmuch as the Oklahoma Legislature did not see fit to impose a statutory minimum or maximum on punishment for contempt, but left the matter wholly to the discretion of the trial judge, and since there may be others who share the view of the Appellant here that criminal contempt should be treated as a felony, we feel certain guidelines are in order at this point to forestall any notion that this Court will endorse out-of-hand summary proceedings for direct criminal contempt in all cases.

■ Basically, we adopt the view expressed by the United States Supreme Court in Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966), wherein that Court rejected the view that a six-month prison term for criminal contempt warranted a jury trial. Since that time, the high Court has not seen fit to move the line from the six-month point insofar as distinguishing between "petty and serious" offenses and reinforce their *Cheff, supra,* decision in Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). Therefore, this Court would adopt the position that in a case of direct criminal contempt which is to be handled in summary fashion by the court should it become evident or apparent that the punishment to be imposed will exceed a term of six months in the county jail, absent an intelligent and informed waiver, the defendant will be entitled to a jury trial.

It is, therefore, the order of this Court that the purported appeal herein be, and the same is hereby, dismissed.

BRETT, J., dissents.

SIMMS, J. (assigned), specially concurs.

BRETT, Judge (dissenting).

I am compelled to specifically dissent to this decision. On September 9, 1972, this Court dismissed the appeal from a direct contempt citation in Robinson v. State, Okl.Cr., 501 P.2d 215, for similar reasons without explaining what is meant by a "formal judgment and sentence" in direct contempt proceedings. So far as I know.

there is no printed form in the nature of a formal judgment and sentence for direct contempt proceedings. The text writers refer to "judgments or sentences" and "orders for committment"; and the cases which this Court has considered, in which the judgment and sentence was reported, indicate a typewritten statement of the facts upon which the citation was based, the finding, and the sentence imposed by the court. Consequently, I do not consider the rule stated in Baker v. State, supra, is necessarily applicable in these "special proceedings".

While 21 O.S.1971, § 568, provides: "Whenever a person shall be imprisoned for contempt the substance of the offense shall be set forth in the order for his confinement, and made a matter of record in the court.", the same statute has been applied in direct contempt proceedings when only a fine was imposed. See: Young v. State, Okl.Cr., 275 P.2d 358 (1954).

In the instant matter, the court minute was filed of record and it sets forth the substance of the facts which served as the basis for the citation, an opportunity for the contemnor to explain, the finding of guilty, and the judgment of a $100 fine. Also, that court minute was filed in the Honorable Trial Judge's own handwriting. To my way of thinking, this constitutes a judgment and sentence upon citation for direct contempt of court; and is a "formal judgment and sentence". In addition, a check with the Court Clerk for the District Court of Cleveland County reveals that no other printed, typed, or other form of order has been included in the file in that court's case number C–71–524, other than the "Judges Trial Notes" referred to, and dated September 21, 1971. No doubt the trial judge considers that to be sufficient judgment and sentence to support his proceedings, or he would have prepared a more formal typewritten order.

Secondly, the majority decision is premised upon this Court's 1948 decision in Ex parte Stephenson, supra, and fails to recognize the Oklahoma Supreme Court's decision in Fulreader v. State, Okl., 408 P.2d 775 (1965), in which the following was recited:

"The law is well settled by prior decisions of this Court that proceedings for direct contempt are neither civil nor criminal in character but are sui generis . . . . "

The proceedings in the instant matter are very similar to those found in *Fulreader*. Also, subsequent to the Supreme Court's decision in *Fulreader,* this Court recited with approval the same rule of "sui generis" in Sullivan v. State, Okl.Cr., 419 P.2d 559 (1966); and Pate v. State, Okl. Cr., 429 P.2d 542 (1967). It follows therefore, if the proceedings are neither "civil nor criminal in character", then the punishment therefor should not be classified as being either "misdemeanor" or "felony" in character.

Prior to this Court's decisions in Sullivan v. State, supra, and Pate v. State, supra, the different classification of direct contempt proceedings existed; but since those decisions were rendered, both Courts have considered that a direct contempt appeal could be taken to either the Supreme Court, or to this Court. The majority decision in this case appears to be a reversion, back to the pre-existing condition of confusion, to which I do not subscribe. See: 4 Okl.Law Rev. 495, 1951, for a discussion on this aspect of direct contempt proceedings.

Lastly, I believe the discussion with reference to Cheff v. Schnackenberg, supra, is unnecessary for the reason direct contempt proceedings are summarily disposed of, and there is no requirement for a jury.

I respectfully dissent to this decision.

SIMMS, Judge (specially concurring):

We feel we must add our concurrence to the decision and result reached by Judge Bussey and while we agree with that portion of Judge Brett's dissent that indicates the majority opinion appears to be a reversion, we must respectfully observe that such a reversion is necessary in order to

follow the law and to preserve some semblance of order in our appellate process.

We strongly disagree with that portion of the holding in *Fulreader*, supra, which stands for the proposition that proceedings for direct contempt are *sui generis*, that is neither civil nor criminal, for several reasons.

First, historically, direct contempts have been treated as "criminal" in Oklahoma's appellate and trial level courts for a fairly obvious reason. Contempt, by definition, case law, and general authority, is a criminal offense. See, Deskins v. State, 62 Okl.Cr. 314, 71 P.2d 502 (1937). The Oklahoma Statutes which define contempt, outline the elements thereof and fix the punishment therefor are found in Title 21, under "Crimes and Punishments." 21 O. S.1971, §§ 565, 566, 567, and 568.

Judge Brett himself, writing for the Court in Hunter v. State, Okl.Cr., 375 P.2d 357 (1962), stated: " * * * the matter of defining crimes and fixing degrees of punishment is one of legislative power." Judge Brett then cited 21 O.S.1971, § 2, which states no act or omission shall be deemed criminal except as authorized by this code (Title 21), indicating at least by implication that those acts prohibited by Title 21 are, in fact, "crimes."

Second, Oklahoma, by case law, has held a direct contempt in the presence of the court, as in the case at bar, to be direct criminal contempt. Cannon v. State, 58 Okl.Cr. 451, 55 P.2d 135 (1936).

Third, the *Cannon* case, supra, which has never been overruled, holds directly and specifically Article 2, § 25 of the Oklahoma Constitution abrogates the doctrine that proceedings to punish for contempts are *sui generis*. In that opinion, Judge Doyle pointed out:

> "There is perhaps no other state with a Constitution containing a provision similar to this provision."

Judge Doyle's quote concerns the direct and broad grant of power by the framers of our state constitution to the Legislature to regulate, define, and punish contempt.

Fourth, a close reading of *Fulreader*, supra, concerning the *sui generis* portion of that opinion, a per curiam decision by the Oklahoma Supreme Court, reveals that portion of the opinion is grounded entirely upon three decisions:

Best v. Evans, 297 P.2d 379 (Okl.1956); Brown v. State, 178 Okl. 506, 62 P.2d 1208 (1936); and, Dancy v. Owens, 126 Okl. 37, 258 P. 879 (1927). Neither *Best* nor *Brown*, supra, make any reference to the term *sui generis*. Both are Oklahoma Supreme Court decisions dealing in part with that Court's jurisdiction in contempt proceedings growing out of civil litigation. *Best,* in fact, cites *Cannon,* and adopts the same basic reasoning.

The convoluted facts and circumstances which gave rise to the *Dancy* opinion, supra, make it even more difficult to apply to the case at bar than to *Fulreader*. Much of the *Dancy* holding dealt with a jurisdictional dispute between the Court of Criminal Appeals and the Oklahoma Supreme Court, a dispute long since resolved by case law and statute. Further, that dispute apparently was resolved at the time *Cannon* was written inasmuch as none of the reported decisions impair its vitality with the lone exception of *Fulreader*.

Fifth, Judge Brett, in relying upon *Fulreader*, points out this Court has recited the *"sui generis"* rule with approval in *Sullivan* and *Pate,* supra. Insofar as the *Sullivan* case is concerned, we agree. In *Sullivan,* we note the exact language of *Fulreader* and the *sui generis* theory is reproduced in the first syllabi, although not in the body of the opinion. As we pointed out earlier, we disagree with the statement that the law in Oklahoma is "Well settled" on that point.

With regard to *Pate,* supra, we feel we must disagree since a close reading of that case, much like two of the cases upon which *Fulreader* is based, reveals that absolutely no reference is made or implied with regard to the *sui generis* theory advanced in my colleague's dissent.

In the early portion of his dissent, Judge Brett indicates his disapproval of dismissing an appeal for lack of a "formal judgment and sentence" without having first defined same. We reiterate our conviction that the rule cited in *Baker,* supra, applied here since we do not agree that the situation at bar is a "special proceeding," but so simple a reply begs the question.

Judge Brett's dissent refers us to the lengthy and scholarly treatment of contempt in *Young,* supra, and we note with some interest the Court was not satisfied with judgment and commitment in that case, preferring the more "technically correct" documents set out *in toto* in *Deskins,* supra.

The Deskins holding specifically states contempt is a criminal offense, and further, the opinion graphically illustrates the proper form of those items which Judge Brett indicates the text writers refer to, that is to say "judgments or sentences," and "orders for committment [sic]."

Judge Doyle, writing for the Court in *Deskins,* sets out "Judgment and Sentence of the Court on Direct Contempt" and the "Commitment" showing the proper form and content of each as dictated by § 568. Therefore, we would adopt the form outlined in *Deskins* to fill the void Judge Brett feels we have left in *Robinson,* supra, by failing to define "formal judgment and sentence." As a point of interest, Robinson sought and was granted Post-Conviction Relief by this Court in Robinson v. State, Okl.Cr., 503 P.2d 582, 1972, because the trial court failed to follow § 568.

In this case, Judge Brett apparently is persuaded that when a trial judge feels his "Judge's Trial Notes" are sufficient to support any judgment he might render, that it's perfectly all right for that judge to ignore the technicality of a statute and avoid the time and trouble of preparing a formal typewritten order. We cannot agree with such slipshod tactics and have so held. Bishop v. State, Okl.Cr., 377 P.2d 845 (1963); Morrow v. State, Okl.Cr., 429 P.2d 1021 (1967).

Lest my colleague think Oklahoma occupies a minority position concerning direct and criminal contempt, I would direct his attention to the general authorities. 17 Am.Jur.2d, Contempt, § 4 et seq.; 17 C.J.S. Contempt §§ 3, 5(1) et seq.

Finally, Judge Brett dismisses our reference to the reasoning of the United States Supreme Court expressed in Cheff v. Schnackenberg, supra, concerning jury trials for contemnors who might draw jail terms exceeding six months because, as he states, such matters are handled summarily and no jury is required.

It would appear then, that my colleague would have no difficulty in affirming a contempt conviction, assuming *arguendo* the only question before the Court concerned denial of the right to jury trial, where a trial judge summarily sentenced a contemnor to five years and a $5,000 fine.

In view of the foregoing and with an eye toward the practical facts of our rapidly rising caseload's ever increasing requirement for orderly adherence to the rules at all levels, we must concur with the Presiding Judge.